*Judgment affirmed.*

---

(No. 14981.—Reversed and remanded.)

ED NEAL, Appellee, *vs.* ALBERT ODLE, Appellant.

*Opinion filed June 20, 1923.*

1. PLEADING—*when complainant is entitled to default for want of sworn answer—waiver.* Where a bill is sworn to and the answer under oath is not waived, an answer not under oath is a nullity if the question is raised in apt time, and the complainant is entitled to a default for want of a sworn answer; but if a replication is filed to the unsworn answer the answer under oath is waived.

2. SAME—*material allegations of sworn bill must be proved.* A sworn bill is not evidence for the complainant, and under such a bill the complainant is required to prove all the material allegations not admitted by the answer. .

3. ELECTIONS—*rules of chancery govern pleadings in an election contest.* The rules of chancery govern the pleadings in an election contest.

4. SAME—*petitioner to contest election must prove allegation that he is an elector.* The omission of the petitioner in an election contest to allege that he is an elector of the town or precinct in which the election was held for the contested office is fatally defective on demurrer, and the failure to prove such material allegation when made, and when positively denied by the answer, is necessarily fatal, even though the facts in the petition are verified by affidavit.

5. SAME—*ballots which are not indorsed with initials of election judge cannot be counted.* In an election contest, ballots which do not contain the initials of the election judge indorsed on the back thereof cannot be counted although they have been properly marked as votes for a particular candidate.

6. SAME—*when ballots cannot be counted for all candidates on a party ticket.* Where ballots do not contain a circle opposite the name of the political party at the head of the party's candidates, a cross in the square opposite the name of the first candidate in the

party column is not a vote for the entire party ticket and cannot be counted as a vote for a candidate opposite whose name no cross is made.

7. SAME—*what amounts to voting a party ticket.* Where the voter makes a circle opposite the party name and puts a cross therein he votes a straight party ticket, and his vote will be counted for every candidate in the party column except where he has otherwise indicated a vote for a particular candidate of another party by making a cross in the square opposite such candidate's name.

8. SAME—*when ballot is not rendered void by a distinguishing mark.* Where a voter draws lines through the name of one candidate and properly marks his ballot in favor of the opposing candidate the marks do not render the ballot void as unlawfully distinguishing it, and the ballot should be counted as marked.

9. SAME—*a ballot must be marked with a cross in the square.* Under the Australian Ballot law, a ballot, to be properly counted as a vote for a candidate, must be marked with a cross in the square opposite the candidate's name or a cross in the party circle, and where the two lines constituting the cross intersect outside the square the ballot cannot be counted for the candidate whose name is opposite the square.

10. SAME—*what must be considered in determining result of election by the returns.* The ballots themselves are the best evidence in an election contest where it is shown that they have been properly prepared and preserved, but where it becomes necessary to determine the result of the election by the returns of the judges and clerks, the court should hear all the evidence possible as to how the votes were inspected, counted and tallied and as to whether the judges made the statutory declaration of the result of the count as soon as the same was made.

APPEAL from the County Court of Franklin county; the Hon. W. F. SLATER, Judge, presiding.

JOHN E. CARR, and GEORGE SAWYER, for appellant.

J. A. LAMKIN, and H. R. DIAL, for appellee.

Per CURIAM: Appellant, Albert Odle, and appellee, Ed Neal, were candidates for the office of highway commissioner on the republican and democratic tickets, respectively, at an election held in the town of Frankfort, in Franklin county, April 4, 1922. There were no other can-

didates for that office at that election and these two were the only political parties having candidates. The tickets on the ballots were headed by the party designations, "Republican" and "Democratic." At the same election a supervisor, three assistant supervisors, an assessor, township clerk and school trustee were elected. On the republican ticket there were candidates for all of said offices, with their names printed on the ballots and with squares to the left of the names. The first name on that ticket was that of W. C. Finney under the words "For Supervisor." There were only two names printed on the democratic ticket,— W. C. Gray for assistant supervisor and Ed Neal, appellee, for highway commissioner,—and there were squares to the left of their names. At the top of the democratic ticket were the words "For Supervisor," with a blank space thereunder for the name of the candidate for that office to be written. Gray's name occupied the next space as a candidate for assistant supervisor, and his name was followed by two blank spaces in which the voter might write the names of two other candidates for assistant supervisor. The next name on that ticket was that of appellee as a candidate for highway commissioner, his name being opposite that of appellant. Thereafter followed three other blank spaces, headed by the words "Assessor," "Town Clerk" and "School Trustee." There were no squares printed on this ticket to the left of the blank spaces. At the bottom of both the republican and democratic tickets there was a blank space under the words "For Poundmaster," and there were no squares printed to the left of those blank spaces. There was no circle printed to the left of the party designations "Republican" and "Democratic." There were three voting precincts in the town, referred to in the record as polls or precincts 1, 2 and 3. At the close of the election the judges and clerks counted the votes and prepared their returns, which were canvassed on April 6, 1922, by the board of canvassers of the town, who found that appellant had

received 557 votes and appellee 552 votes. Appellant was thereupon declared elected and a certificate of election was issued to him. Thereafter appellee filed his petition to contest the election in the county court of Franklin county, verified by affidavit. Appellant filed an answer which was not verified by affidavit, to which appellee filed a replication. The issues were tried by the county court, who found from the evidence that appellant had received 519 legal votes for said office and that appellee had received therefor 572 legal votes, and adjudged that appellee had been duly and legally elected to said office and ordered that a certificate of election be issued to him, etc. Appellant has prosecuted an appeal to this court.

It was alleged in the petition by appellee that he is a legally qualified elector of the town. This allegation was positively denied by the answer of appellant, and there is absolutely no proof in the record that appellee is an elector of the town. It was also averred in the petition that at said election there were cast a large number of ballots that were counted by the judges and clerks of the election as straight republican ballots which were only marked by the voter placing a cross in the square to the left of the name of W. C. Finney, the first name at the head of the republican ticket, and which were counted by the judges as votes for appellant for highway commissioner, and that there were a large number of other votes that were illegally counted for appellant, and that upon a correct count appellee would be found to have received a greater number of legal votes than appellant.

The first contention made by appellant is that the burden of proof that appellee was an elector of the town at the time he filed his petition for contest was upon him, and that the judgment must be reversed for want of proof on that issue. The substance of the provision of section 112 of the Elections act (Hurd's Stat. 1921, p. 1388,) is, that the election of any person declared elected to any office in

a town or precinct may be contested by any elector of such
town or precinct in and for which such person is declared
elected.   The omission of a petitioner to allege that he is
an elector of such town or precinct is fatally defective on
demurrer.   (*Blanck* v. *Pausch*, 113 Ill. 60.)   The failure
to prove such material allegation is necessarily fatal in a
contest of such an election by the contestant.   It is the
claim of appellee that the facts that the petition in this case
was verified by affidavit, and that there is no denial of the
allegations of the petition in the answer not under oath, or
in the evidence of appellant, obviate the necessity of proof
of the allegation.   It has been decided in a number of
cases by this court that the same rules governing chancery
proceedings govern the pleadings in an election contest.
(*Talkington* v. *Turner*, 71 Ill. 234; *Dale* v. *Irwin*, 78 id.
170; *Quartier* v. *Dowiat*, 219 id. 326; *Brents* v. *Smith*,
250 id. 521.)   The rule in chancery is, that where a bill is
sworn to and the answer under oath is not waived therein,
such an answer to such sworn bill is a nullity if properly
taken advantage of in apt time, and that the complainant in
the bill is entitled to a default for want of a sworn answer.
The petition in this case did not waive the answer under
oath.   It is also the rule under our present chancery prac-
tice that an answer not verified by oath is a mere pleading
and not evidence in the case, but if a replication is filed
to an unsworn answer the answer under oath is waived.
(22 Ency. of Pl. & Pr. 1049-1052.)   It is also the rule
that a sworn bill is not evidence for the complainant, and
that under such a bill he is required to prove all of the
material allegations therein contained not admitted by the
answer.   The same rule must prevail in petitions to contest
elections, and the failure of appellee to make proof of his
allegation is necessarily fatal.

The only other contention made by appellant on this ap-
peal is that the returns of the judges and clerks of the elec-
tion are the best evidence of the result of the election, be-

cause the ballots were not properly preserved and guarded, according to the provisions of the statute, against unlawful handling and changing by unauthorized persons. The arguments presented by counsel for the respective parties on this latter question are of little assistance to this court in passing upon that issue for the reasons hereinafter stated.

The record discloses that in this contest the court appointed tellers to tally the votes counted for the respective parties and to report the result of such count to the court. It is very evident from the record that the bill of exceptions or certificate of the evidence and the record do not disclose the rulings of the court, if any were made, as to how the ballots were counted or ruled upon by the court. The record does not disclose the result of the count in any one of the precincts. The tellers' tally sheets, all of the ballots cast at the election in those precincts and returned by the judges and clerks, all the poll-books, the tally sheets and returns made by the judges and clerks, and certain other files designated as exhibits before the trial court, have been certified to this court by the clerk of the court by order of the trial judge. The tally sheets of the tellers simply show the tallies made by them of all votes counted for appellee and for appellant and the total result of those tallies but they do not show how many votes each candidate received in any one of the precincts. Neither the abstract nor the briefs filed in this case give any light on the rulings of the court or as to how the ballots were counted. The abstract is only an abstract of the oral evidence upon the questions how the judges and clerks of the election in precinct 1 counted the ballots and how they were strung and sealed; the manner in which the same and the returns, etc., were returned by the judges of election; who returned them and how they were kept and preserved after they were returned; and all this evidence is very meager, incomplete and unsatisfactory. In other words, the record, the abstract and the briefs do not enlighten us at all as to the rulings of the

court on the re-count on any ballots certified to us, and furnish no evidence or information whatever as to how the judges of election in precincts 2 and 3 counted the ballots, or any of them, or whether or not they followed the law fully in counting the ballots and making their returns. The rules of this court require that the record shall contain all rulings of the court, if any, that are to be reviewed, and that all the evidence and the rulings of the court shall be abstracted, and that all contested facts and points be put before us plainly, clearly and concisely, so we may readily comprehend the issues presented for decision.

After performing the extraordinary labor of examining minutely and in detail all of the original evidence in the record, our conclusion is that it is not possible from the present record to determine whether the returns of the judges of election or the ballots returned by them are the best evidence as to whether appellee or appellant was elected at the election. We have reviewed the original ballots and counted the same without any intention of binding either party by our count of any of the ballots, but simply for the purpose of showing the condition of the record and indicating what is necessary on the re-trial to properly determine the merits of this controversy.

The poll-books returned by the judges of election of precinct 2 show that 262 electors voted in that precinct. The ballots returned by the judges of the election and certified to this court correspond exactly with the number of ballots cast as shown by the poll-books. By the returns of the judges of said precinct appellee received 134 votes and appellant 119 votes. On our examination of the ballots of this precinct we find that all of them are indorsed by Robert E. Gray, town clerk, as official ballots of the precinct. All of them were indorsed with the initials of an election judge of that precinct except three, which do not bear such indorsement. The record does not disclose whether or not the last three ballots were counted by the judges of election

or by the trial judge in his count. On examination of the votes of this precinct as certified, we find that 129 of them are properly marked by the voters as legal votes for appellee and 111 of them as legal votes for appellant, including one ballot stamped by the county clerk and hereafter explained. The three ballots that are not indorsed with the initials of an election judge are properly marked by the voters as votes for Ed Neal but are not counted by us for the reason aforesaid. Seven other ballots of said precinct cannot be counted for either party to this contest. Two of the seven contain crosses marked in the square to the left of the first name on the republican ticket, one of which contains also a cross in the squares to the left of both the names of appellant and appellee, and the other contains no cross to the left of either the name of appellant or of appellee. Two others of the seven ballots contain no cross in either square to the left of the first name on the republican or democratic ticket, one of which contains a cross in the square to the left of the name of appellant and also a cross in appellee's square, and the other is not marked with a cross in the square of either appellant or appellee. The last one of the seven ballots is marked with a cross in the square to the left of the first name on the democratic ticket and also with a cross in the squares of both appellee and appellant.

We find in the record a number of ballots that were in a separate package bearing the stamp-mark of the county clerk, which mark contains the date May 16, 1922. The record does not furnish any explanation why these ballots were so stamped by the clerk, and we will refer to them hereafter as stamped ballots. Thirteen of those stamped ballots were ballots cast in precinct 2, and of the 13 nine bear a cross-mark in the square opposite the first name on the republican ticket and eight of the nine contain no cross or mark either in the square of appellant or of appellee and therefore cannot be counted for either. The other one of

the nine is marked with a cross in the square to the left of the name of appellant, and we count the same for him as above explained. Three others of the stamped ballots were marked with a cross in the square of W. C. Gray, the first name on the democratic ticket, but contain no mark in the square of either appellant or of appellee and therefore can be counted for neither of them. The last of the thirteen stamped ballots bears no cross to the left of the name of either appellant or appellee and has no cross to the left of either name at the head of the republican or democratic ticket and cannot be counted for either candidate, and there is no reason appearing for the judges counting this ballot for either party and no indication that they did.

It is probable from the meager evidence in the record that the judges of election counted for Neal the three ballots that did not bear the initials of a judge of the election, and that they also counted for him the three stamped ballots that contained crosses in the square of W. C. Gray, the first name on the democratic ticket, but no cross in the square of appellee or appellant, and that they regarded this as a straight democratic ticket in the same manner as they would if there had been a circle at the top of the ticket containing a cross. It is also probable, on the same theory, that eight votes were counted for appellant which contained a cross in the square to the left of the first name on the republican ticket and no cross in either appellant's or appellee's square. If our assumptions are correct and we add these six votes to our count of Neal's vote and eight votes to our count of Odle's vote, the result would be 135 votes for Neal and 119 votes for Odle, which corresponds exactly with the number of votes the judges returned for Odle and only varies one vote from the judges' return of Neal's vote. If our assumptions should prove true as to how the judges counted the votes in this precinct, the showing would be very clear that the judges' mistake in counting the ballots in this precinct was not the result of fraud but the result

of misconception of the law as to how 11 of the ballots should be counted, and also in overlooking the fact that three of Neal's votes were not indorsed with the judge's initials.

According to the poll-books returned from precinct 3, 243 persons voted in that precinct. The ballots returned by the judges from this precinct, including 27 stamped ballots and two ballots found with other ballots in an envelope indorsed, "Frankfort Township Elec. Exhibit 'A,'" correspond exactly with the number of voters on the poll-lists. According to the returns of the judges of election of this precinct, 149 votes were cast for Neal and 84 votes for Odle. On examining the ballots we find that 140 of them are properly marked for Neal and 69 are so marked for Odle. Of the votes we count for Neal, two were stamped ballots, one of which was marked with a cross in his square, the two lines of the cross crossing each other near the upper right-hand corner of the square, but the cross is in the square. This ballot is also marked for Gray on the democratic ticket and for McClintock on the republican ticket. The other stamped ballot is marked with a perfect cross in Neal's square, and there is a line or two drawn through the name of Odle, and Odle's square is slightly blackened. This ballot is also marked for McClintock with a cross in his square and also with a cross in Finney's square at the head of the republican ticket. We think the voter clearly intended this as a vote for Neal, and that the marks on the ballot were not made for the unlawful purpose of distinguishing it but for the purpose of further indicating that he did not want to vote for Odle. We find also eight other stamped ballots that are marked with a cross in the square of W. C. Gray, the first name on the democratic ticket, and which were probably counted by the judges as votes for Neal on the theory that they were straight democratic ballots. None of them contain a cross in the square of appellee and therefore could not properly be counted for him.

There is also one other stamped ballot which the judges probably erroneously counted for Neal which contains a cross partly within the square and partly on the right-hand side of the name of Gray, at the head of the democratic ticket. The horizontal line of this cross is marked clear across the square and continues for about one-quarter of an inch beyond the right of the square of Gray. The ballot contains a similar cross made partly in and partly out of the square of Neal, but the point where the two lines cross is just to the right of and entirely outside of the square and therefore cannot be counted as a vote for Neal. This ballot was probably cast by a voter who was either very careless in making his cross or whose sight was so defective that he made the cross outside the square. Of the votes that we count for Odle, one of them is a stamped ballot marked with perfect crosses in the squares of appellant and of Julian and Brown on the republican ticket. There are also 14 other stamped ballots that are only marked by the voters placing a cross in the square of Finney, at the head of the republican ticket, which were probably erroneously counted by the judges for Odle on the theory that they were straight republican votes. There is also one other stamped ballot which is marked with a cross in the square at the head of the republican ticket and also with crosses in the squares of C. R. Richards, Leona Brown and A. E. Bryant, which also may have been counted by the judges of the election as a vote for Odle on the theory that it was a straight republican ticket, but it clearly cannot be so counted because there is no cross in Odle's square. There are also eight other ballots that are not stamped that can not be counted for either appellant or appellee because of the fact that a cross is marked in each one of their squares on six of the ballots, and the other two ballots of these eight have no cross in the square of appellee or of appellant. The two ballots in the envelope marked exhibit "A" cannot properly be counted for appellant or for appellee, for the reason

that neither one of these ballots contains a cross in any square on either ballot. One of them has two crosses on the face of the ballot, one of which is just above and to the left of the blank space under the words "For Supervisor," and the other is marked just above and to the left of the blank space above the words "For Highway Commissioner." The other ballot is marked by the voter by marking pencil lines across six names on the republican ticket, including that of Odle. All ballots of this precinct contain a judge's initials indorsed thereon.

If we are correct in our assumption that the judges of the election in precinct 3 erroneously counted the nine stamped ballots for Neal already described, and further assuming that they erroneously counted 15 other stamped ballots for Odle on the theory aforesaid, then our count is the same as the judges' count except as to the ballots erroneously counted by them. The showing on the returns and the ballots themselves thus make a very strong argument in favor of the honest intentions of the judges in making the count and refute the idea that the ballots were unlawfully tampered with and changed after they were returned by the judges, if proof of the correctness of our theory were to be found in the record.

The poll-books of precinct 1 of the town show that 713 voters voted in that precinct. There were only 711 ballots of that precinct certified to us, including 52 stamped ballots and five other ballots enclosed in the envelope already described and marked exhibit "A," and all of which are certified by the town clerk as official ballots of precinct 1 except eight, which are certified by the town clerk as official ballots of precinct 3. All of the 711 ballots except one are indorsed "T. A. S.," being the initials of an election judge of precinct 1, which one ballot is certified by the town clerk as a ballot of precinct 1 and bears no indorsement of the initials of an election judge. Of the 711 ballots we have counted 338 as legal ballots for appellant and 296 as legal

ballots for the appellee. Of the ballots counted by us for Odle we have included two certified as official ballots of precinct 3, because they are properly marked as ballots for Odle and no objection was made to counting them, so far as we know, in the court below, and they are clearly shown to be ballots cast by voters in that precinct. For the same reason we have included in our count for Neal five similar ballots certified as official ballots of precinct 3, they being properly marked for him. Of the 52 stamped ballots we have counted one for Neal, which is marked with a cross to the left of the first name on the republican ticket and also with a cross in Neal's square. We have also counted another ballot for him of the 52 stamped ballots which is marked in the same way as the ballot just described, except that there are certain crosses marked on the republican ticket which might be regarded as distinguishing marks or otherwise, according to whether or not they existed at the time of the re-count before the lower court and were not otherwise explained. No objection appears in this record to the ballot. For the same reason we have counted two others of the 52 ballots for the appellant, one of which is marked for him by the voter placing a smaller square within Odle's square, thereby making two distinct crosses. The other contains a cross within the square of Odle, with a figure almost like an oval-shaped O also in the square. There are 39 others of the 52 stamped ballots which are only marked with a cross in the square to the left of the first name on the republican ticket, none of which can be counted for appellant or appellee and one of which was certified by the town clerk as an official ballot of precinct 3. Four others of the 52 stamped ballots were only marked by the voter making a cross in the square to the left of the name of W. C. Gray, the first name on the democratic ticket, and for the same reason cannot be counted for either party. The five remaining ballots of the 52 stamped ballots are all marked with a cross in the square to the left of the first

name on the republican ticket, and there are also crosses marked in the squares to the left of the names of other candidates on that ticket, but none of them contain a cross in the square of appellant or appellee and therefore cannot be counted for either of them. Of the five ballots found in exhibit "A" we count none of them for either party, and they cannot be so counted because of the fact that all five contain a cross in the squares of both appellant and appellee, which renders every one of them void. Of the 25 remaining ballots of the 711 inspected by us, one of them does not bear the indorsement of the initials of any election judge. This ballot would be properly marked for Odle had it been properly indorsed with the initials of a judge, but for want of such indorsement we do not count it. Another of those 25 ballots is properly marked as a vote for Neal, but it also shows two straight lines drawn through the name of Odle. We have counted this ballot for Neal. Thirteen others of the 25 ballots cannot be counted for either appellant or appellee because there is no cross marked in the square of either of them. However, one of these 13 ballots contains a cross marked to the right of appellee's name, which cross is followed by a long dash. The other 10 ballots of the 25 cannot be counted for either appellant or appellee because each one of the 10 ballots is marked with a cross in the squares of both appellant and appellee.

The envelope marked exhibit "A" contained in all eight ballots, seven of which we have already commented on and declared that they cannot be counted for any candidate. The remaining ballot in that exhibit was evidently not cast or attempted to be cast by any voter. It is certified by the town clerk on the back as an official ballot of precinct 2 and contains the initials of no election judge indorsed on it. On the face of this ballot the words "Plaintiff's exhibit A" are written to the left and above the word "republican" at the head of the ballot. The ballot is not marked with a cross in any square on either ticket or anywhere on

the ballot.   After each name on the republican ticket and on
the democratic ticket appear figures written with a pencil,
which figures in every instance correspond to the number
of votes received by all of the candidates on both tickets
in precinct 1 as returned by the judges of election of that
precinct.   This exhibit was evidently introduced for some
purpose in the record, but for what purpose cannot be as-
certained by us from anything that appears in the record
or in the abstract and briefs prepared by the parties, and
we only refer to it for the purpose of showing that we have
accounted for all of the ballots certified to us for inspection.

As a result of our count of the votes, Neal received 565,
which is seven votes less than the lower court counted for
him and 13 votes in excess of what the judges counted for
him in all three of the precincts; and by our count Odle
received 518 votes, which is one short of the lower court's
count and 39 short of the vote counted and returned for
him by the judges in all the precincts.   It is probable that
the lower court was not called on by either counsel to re-
ject the ballots found in the record that were not indorsed
with a judge's initials, there being four such ballots, and
that the four other ballots that were rejected by us because
the voter did not place the cross in the proper square were
also not called to the attention of the court for rulings there-
on.   There is no theory upon which we can account for
Neal's receiving more votes in all the precincts than were
counted and returned for him by all the judges in the pre-
cincts.   The only evidence in the record as to how any votes
were counted in any precinct concerns the count of the votes
in precinct 1.   One of the judges of that precinct testified,
in substance, as we understand his evidence, that the judges
of election in that precinct counted as legal votes for Odle
all the republican ballots that were marked only by a cross
in the square to the left of the first name on the republican
ticket, and that they counted all ballots for Neal that con-
tained only a cross in the square to the left of the name of

W. C. Gray, the first name printed on the democratic ticket. All the ballots so marked were counted as straight republican or straight democratic tickets on the theory that the voter intended thereby to vote the republican ticket or the democratic ticket, and that for such determination the first squares were to be regarded as expressing the same intent of the voter as if he had drawn a circle to the left of the party designation of his party and placed a cross therein. No evidence was introduced as to how the judges counted ballots in the other precincts that were marked as above described, and the reason that no such evidence was introduced was because of the fact that the trial judge ruled that such evidence was not necessary. It was for this reason that we assume that the judges of election in precincts 2 and 3 counted such ballots in the same manner they were counted in precinct 1. We have already indicated that the judges in precinct 1 erred in counting such marked ballots as straight tickets for either party, and, as we understand it, the trial judge ruled the same way. On a few of the ballots counted by us the voters casting them drew a circle with a pencil to the left of the party designation and placed a cross in the circle for the purpose of indicating that they were voting a straight ticket except as otherwise marked on the other ticket, and we have counted all such ballots as straight tickets except as aforesaid. But this practice of the voters was not general by any means. According to the testimony of a judge in precinct 1 we would naturally expect that on a re-count the votes of both parties would be cut down, as there were both republican and democratic ballots marked with only a cross in the square to the left of the first name on the ticket voted. The result, as found by the votes certified from that precinct, indicates that there was a very careless and incorrect counting by the judges in that precinct, or that the votes were tampered with and some of them changed after the count was made. It therefore clearly appears that on the re-trial of this case it will be

necessary to hear in detail all the evidence possible that may be given by the judges and clerks of the election in all the precincts as to how the votes were inspected, counted and tallied, and to determine whether or not all the judges inspected the ballots as they were called for the purpose of being tallied by the clerks and whether or not the clerks correctly tallied the votes as called by the judges, and also whether or not the judges made the statutory declaration of the result of the count as soon as the same was made. All this evidence is necessary, not only in this contest but in every other contest, for the purpose of determining the weight to be given to the returns as made by the judges and clerks as evidence.

The judges of all the precincts, on a re-inspection of the ballots certified to us, may be able to determine and to testify whether or not any ballots in their precincts have been tampered with and changed. The judges in precincts 2 and 3 may on a re-inspection of such ballots be able to ascertain and to testify whether or not there probably has been any change of the ballots returned by them. The judges in all the precincts may be able, also, to remember about how many ballots, if any, in their respective precincts were erroneously counted as straight tickets. The judges will also certainly be able to testify whether or not they found any ballots cast by voters that were not indorsed with the initials of an election judge, and whether or not they examined carefully to ascertain such fact before counting the ballots, and also whether or not they discovered in precinct 1 that official ballots of precinct 3 were voted in precinct 1 and how they came to be so voted.

The substance of the testimony in the record as to the stringing and preserving the ballots in precinct 1, as given by one of the judges, is, that the judges were not furnished with new envelopes and bags in which to seal the ballots and the returns but had to use old ones that had been used in other elections, and that they sealed them the best they

could in the envelopes and bags they had, and used all the care they could to preserve them and to deliver them to the town clerk in the same condition as when they left the judges' hands. In this precinct, for want of a wire on which to string the ballots, they stacked them in piles after they were counted, and tied them, thus piled, with strings two ways and sealed the strings with chewing gum where the knots crossed, and then put them in one of the old envelopes and sealed it the best they could by wetting the mucilage and closing the envelope. No sealing wax was used because they had none. The election returns, etc., were sealed in another envelope, and one of the judges took possession of the ballots and the returns and carried them to the town hall after the canvass was made and locked them in the upper part of his roll-top desk, and that no one but himself had possession of the key with which he locked the desk, and that he delivered the ballots to the town clerk the next day in the same condition he had received them. The town clerk testified that he received the election returns from all of the judges in the three precincts in due time and placed them all in a box and locked it and placed it in the Union State Bank in Frankfort Heights, and that they remained in that box up to the time they were canvassed by the canvassing board, and that after the canvass he returned them to the same bank, locked in the same manner, where they remained until the trial of this election contest. The testimony of the judges in precincts 2 and 3 is about the same, in substance, as that of the judge in precinct 1, except that in precinct 2 they strung the ballots on a wire and twisted the ends together without sealing, as they had no sealing wax, and in precinct 3 they strung them on a string and tied the string but did not seal it. The evidence further shows that the judges who returned the ballots and the returns kept them locked up over night and delivered them the next day to the clerk in the same condition as when they received them. The testimony also tended to show

on the trial that all the packages in which the ballots were contained were apparently in the same condition as when they left the judges' hands except in precinct 3, where the testimony showed that the large bag containing both the ballots and the returns was not in the same condition because of the fact that it had to be opened by the canvassing board in order to get the returns that were in the same general envelope as the ballots, the ballots and returns being sealed in separate envelopes and placed in the large envelope and then sealed.

In view of the fact that the ballots were not strung on a wire and the wire twisted and sealed, and were not otherwise prepared and preserved as required by the Australian Ballot law, it will necessarily become a serious question whether or not the returns of the judges and clerks or the ballots are the best evidence in this contest. In view of what the record discloses, it may happen that in one or more precincts the ballots are the best evidence, while in the remaining precincts it may be that the returns of the judges, when properly corrected by the elimination of ballots counted by them as straight ballots, as already indicated, are the best evidence as to those precincts. Both parties on a re-trial of the cause should be allowed the fullest investigation for the purpose of determining these questions, and for the purpose of the investigation the clerk of this court is directed to return the package containing all of the original evidence certified to this court, (which exhibits have been properly enclosed in a separate sealed package for such return, if requested by the parties or either of them,) to the county clerk, who will properly preserve them for the next trial.

The judgment of the county court is reversed and the cause remanded.                    *Reversed and remanded.*