# CHARLESTON.

WALTER S. HALLANAN *v.* A. G. HAGER, *Pres., etc.* BOARD OF CANVASSERS, BOONE COUNTY.

(No. 5891)

Submitted December 8, 1926. Decided December 14, 1926.

1. ELECTION OFFICERS—*Duties Imposed Upon Election Officers by Mandatory Statutes Are Personal and Cannot be Delegated. Rule of Facit Per Alium Facit Per Se Does Not Apply.*

    The duties imposed upon election officers by mandatory statutes are personal and cannot be delegated. The rule of *facit per alium facit per se* does not apply. (p. 693.)

2. STATUTES—*Determination of Wisdom or Expediency of Statutes is Legislative and Not Judicial Function.*

    The determination of the wisdom or expediency of statutes is a legislative and not a judicial function. (p. 693.)

3. CASES APPLIED—

    Pts. 1, 2, 3, and 4 of the Syl. of *Kirkpatrick* v. *Deegans,*
53 W. Va. 275 applied.  (p.692.)

Original Jurisdiction.

Writ of Mandamus petitioned for by Walter S. Hallanan
directed against the Board of Canvassers of Boone County.

                                        *Writ awarded.*

*T. C. Townsend, M. F. Matheny* and *H. D. Rummell,* for
petitioner.

*Henry S. Cato, W. E. R. Byrne, A. W. Garnett* and *Clyde
B. Johnson,* for respondents.

HATCHER, JUDGE:

At the general election held November 2, 1926, Walter S.
Hallanan and Clyde B. Johnson were the respective candi-
dates of the Republican and Democratic parties for the office
of state senator in the eighth senatorial district.

At precinct number 6 of Sherman district in Boone county,
Hallanan received 10, and Johnson 36 votes.  J. E. Scott,
Democrat, and J. E. Schoolcraft, Republican, were the poll
clerks at that precinct.  Scott signed the name of Schoolcraft
to all the ballots, except two on constitutional amendments.
For that reason, Hallanan seeks in this proceeding to compel
the board of canvassers to reject all such improperly signed
ballots in the recount of the vote of said county.

The evidence shows that there was no Republican poll clerk
at that precinct when the polls should have been opened, and
that there was considerable trouble and delay in securing
one.  Several who were requested, refused to act.  Between
eight and nine o'clock that morning, the Republican commis-
sioner, W. T. Compton, went to Schoolcraft, explained the
situation, and insisted that he serve as a clerk.  Schoolcraft
is afflicted with palsy, and writes with difficulty.  On enter-
ing the polls, he stated that he could not write.  Scott then
offered to sign Schoolcraft's name to the ballots.  This offer
was accepted by Schoolcraft and approved by the other elec-
tion officials.  Thereupon, Scott signed Schoolcraft's name,

as well as his own to all the ballots, except two relating to the constitutional amendments which Schoolcraft signed personally.

Sec. 36, Ch. 3, Code of 1899, directed that the words "Poll Clerks" be printed on the back of all ballots, and that under those words each poll clerk write his name, before the ballot should be delivered to the voter. Sec. 66 of the same chapter declares: "Any ballot which is not endorsed with the names of the poll clerks as provided in this chapter, shall be void and shall not be counted." These statutes were construed by this court in *Kirkpatrick* v. *Deegans,* 53 W. Va. 275. It was there held that they were mandatory, that each poll clerk must *personally* sign his name to the ballots, and that all ballots not so signed should be rejected. Judges BRANNON and McWHORTER dissented. Judge BRANNON later became reconciled to the decision, as he cited it with approval in *Stafford* v. *Sheppard,* 57 W. Va. 84. Since then it has been approved in *Center* v. *Board,* 64 W. Va. 499; *State* v. *Heatherly,* 96 W. Va. 685; *State* v. *Hatfield,* 97 W. Va. 695; and *Hatfield* v. *Board,* 98 W. Va. 41. The word "personally" was inserted in the statute by an amendment made in 1908. It now reads "each poll clerk shall personally write his name in ink." Under established rules, it thus appears that the Legislature has accepted the construction placed upon the statute by this court. Our construction and the statute have become one. That construction is therefore no longer an open question in West Virginia. *Kelley* v. *Bowman,* 68 W. Va. 49. We are much surprised at the repeated statement of counsel for the respondents to the effect that this court, in following the *Kirkpatrick* case, is treading a judicial pathway alone. The decision in that case is not based on any new or radical principle. It stands four square on established rules of construction. Statutes similar in form to those under consideration have been held mandatory by all the decisions and authorities which we have investigated, from the earliest recorded cases to the latest reports. In the old English case of *Pearse* v. *Morrice,* 2 Ad. & E. 96, it was held: "The distinction between directory and imperative statutes has long been known***

a clause is directory where the provisions contain mere matter of direction and nothing more: but not so where they are followed by such words as are used here, viz, that anything done contrary to such provisions shall be null and void to all intents. These words give a direct, positive and absolute prohibition which cannot be dispensed with.'' While some courts have not accepted fully the description of a directory statute given in the English case, all concur in its specification of one that is mandatory. ''It is an established rule of construction that where a legislative provision is accompanied with a penalty for failure to observe it, the provision is mandatory. It would offend against the plain and unmistakable meaning of such statute to otherwise construe it.'' *Cramer's Case,* 248 Pa. 208 (216). ''If the statute provides that ballots which fail to conform to certain requirements shall not be counted, the command is imperative.'' Lewis Sutherland Statutory Construction, 2nd. Ed. par. 709, p. 1290. 10 A. & E. Ency. Law, 726; 25 R. C. L. p. 772, par. 19; 20 C. J. p. 181, par. 223

In *Newhouse* v. *Alexander,* 27 Okla. 46, *Kirkpatrick* v. *Deegans, supra.,* was quoted with approval as based on ''an exhaustive review of the authorities.'' Other later decisions affirming the same principle announced in the *Kirkpatrick* case are: *Rhodes* v. *Driver,* 69 Ark. 501; *Miller* v. *Schallern,* 8 N. D. 395; *People ex rel Michels* v. *Board,* 129 N. Y. 395; *Turner* v. *Teller* (Tex.), 275 S. W. 115; *Slaymaker* v. *Phillips,* 5 Wy. 453; *McKay* v. *Minner,* 154 Mo. 608; *Parvin* v. *Winberg,* 130 Ind. 561; *Neal* v. *Odle,* 308 Ill. 469; *Kelso* v. *Wright,* 110 Iowa 560. See also annotation, p. 48, Ann. Cases, 1918 A. Instead of *Kirkpatrick* v. *Deegams* being an exceptional case, we find it surrounded by a goodly host of decisions which no authority has had the temerity to attack.

Counsel for respondents argue that the signing of Schoolcraft's name on the ballots by Scott, at the direction of, and in the presence of Schoolcraft, was in legal effect the personal signature of Schoolcraft and constitutes a substantial compliance with the statute. We are referred to the law upholding the right of a principal to delegate to his agent au-

thority to sign his name to contracts, deeds, etc. This is the same argument advanced by Judge BRANNON in *Snodgrass* v. *County Court,* 44 W. Va. 56, but which he later abandoned in *Stafford* v. *Sheppard, supra.* In the *Snodgrass* case, Judge BRANNON cites Sutherland St., par. 454, (par. 627, 2nd. Ed.) to support his theory that "fairly substantial compliance is sufficient". That citation is inapposite. It states: "Mandatory statutes are imperative; they must be strictly pursued *** Where legislation points out specifically how an act is to be done, *** it must be strictly pursued." An effective answer to the contention of counsel is found in the opinion of *Rhodes* v. *Driver, supra.,* where the court discusses a statute requiring at least one of the election judges to write his name or initials on the back of the ballots: "There is good reason why the judge should be required to indorse his own name. Then he can swear to his own signature, and, if he be dead, or out of reach, in case of contest, and the ballot be called in question, other witnesses can be called to identify his signature. But if each judge indorses the other's initials and not his own, then there are no indorsements as the law provides, and no witnesses of identification to the actual signature, and the very purpose of the law—to prevent spurious ballots, to prevent conspiracies and combinations among the judges themselves, to make each a check upon the other—is frustrated. *** If the statutory mode is not pursued, then there can be no compliance with the provision at all. It is a dead letter. For, if one judge could write the other judge's name, in departure from the statutory requirement, why not the sheriff, or his deputy or any one of the clerks do the same? The rule of *facit per alium facit per se* does not apply to election officers. Each must perform his own duty." Further answer appears in the elaborate discussion of Judge POFFENBARGER, commencing on p. 279 of the opinion in the *Kirkpatrick* case. Judge DENT concurring, tersely disposes of the matter as follows: "Election officers have no duties they can transmit to successors or entrust to agents, but their duties are all personal."

Counsel contend that the situation at this precinct brings it under the reasoning of this court in *Hatfield* v. *Board,*

102 W. Va.

*supra.* We held there that the signature of the poll clerks need not appear on an absent voter's ballot. Why? Because the Absent Voters Statute contemplated the authentication and identification of the absent voter's ballot by the signature and seal of the clerk of the circuit court thereon, and did not direct that it be indorsed by the poll clerks. That statute was complete in itself and not dependent on or governed by the general election laws. The opinion makes it very plain that the decision was based solely on the provisions of the statute, and that there was no intention to depart from the ruling of the *Kirkpatrick* case as to voters who were present at the polls. See opinion, p. 56.

Counsel also claim that the facts in this case bring it "squarely within the rule apparently laid down by this court in *Hatfield* v. *Skaggs,* as an exception to the rule of excluding all ballots with the handwriting of only one clerk on the back thereof." This reference must be an inadvertence, as the question of the validity of ballots signed by one clerk only, did not arise in *Hatfield* v. *Skaggs.* (101 W. Va. 425).

Counsel advance the proposition that since no fraud is shown, this precinct should not be thrown out and thus disfranchise innocent and honest voters. This same proposition was carefully considered in the *Kirkpatrick* case. See opinion p. 287-8. The conclusion there is: "The ballots are, by express declaration of the law, void, without reference to the presence or absence of fraud." We may well say here, as was said in *Atty. Gen'l.* v. *Kirby,* 120 Mich. 592, "It is due to the members of the election board to say that there is no evidence that they acted from corrupt motives. If, however, this conduct can be sustained, and the plain provisions of the law ignored, rascals can very readily make the same plea, and it would be difficult to expose their rascality."

Counsel invoke the law of necessity as an excuse for Scott signing Schoolcraft's name on the ballots. The evidence, however, does not make a case of necessity. It is true that there are inconsidered statements in the testimony of Schoolcraft and other witnesses that Schoolcraft could not write; but it is unquestioned that he did sign two ballots; that he

was right handed, and when he placed his right hand on a support it became "still"; that the precinct was a small one, and that the people came to vote very slowly. This evidence fails to show that Schoolcraft, with a proper support for his right hand, could not have taken his time, and personally endorsed the ballots, even though it would have taken much more time than Scott consumed, and would have been accomplished by Schoolcraft with difficulty. The evidence is also unquestioned that three Republicans, Mrs. Manuel Totten, W. T. Compton, and John Camp, who were election officers at that precinct, could sign their names. Any one of these three could have served as poll clerk, and Schoolcraft could have acted in some capacity, which did not require any considerable amount of writing.

Counsel finally advance a question of policy and assert that if our rule is not "quickly modified, the court will soon find itself giving judicial sanction to many deliberately planned frauds following every election." We cannot agree with this forecast. To the contrary, we are of opinion that strict construction of such statutes will deter instead of encourage fraud. Be that as it may, we have inherited from the old English court this inhibition: "A court of law ought not to be influenced or governed by any notions of hardship; cases may require legislative interference, but judges cannot modify the rules of law." *Rhodes* v. *Smithurst,* 4 Mees. & W. 63. In *Kirkpatrick* v. *Deegans* the court but followed the plain expression of the statutes. Legislatures subsequent to that case have done nothing to modify the decision. A change by this court in that construction would in effect change the statutes. This we cannot do. Such an act by us would be legislative and not judicial. The wisdom and expediency of the statutes, as well as any change therein, must be left to our law makers. Sedgewick, St. and Const. Law, 2nd. Ed. p. 325. "It is better that an individual should be temporarily deprived of his rights than that the courts should overstep the boundaries of established precedent and sound construction, and annihilate the line which separates the legislative

from the judicial functions." *State ex rel Breckenridge* v. *Cook*, 41 Mo. 593. *Boyd* v. *Mills*, 53 Kan. 594 (608).

A peremptory writ of mandamus will therefore be awarded.

*Writ awarded.*