MELVIN BROOKS, PEARLEY EPLING, ESTIL L. "BREEZY" BEVENS *and* MRS. CARL E. RIGGS

*v.*

DON CRUM, HARRY WHITE, CHARLES CONLEY, FRED GOFF, C. J. "BEN" HAMILTON, CLARENCE JUSTICE *and* MAE STALLARD

(No. 13320)

Decided June 17, 1975.

*William L. Jacobs* for appellants.

*W. Graham Smith, Jr., and John M. Richardson* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal from a final judgment of the Circuit Court of Mingo County which, in turn, reviewed a ruling and proceeding involving an election contest for certain

county offices appealed from the County Court of Mingo County.

Briefly stated, the facts involved in this appeal concern certain alleged voting irregularities arising from the primary election conducted in Mingo County of May 1972, in four voting precincts which appellants contend, if successfully proved, would effectively alter the results of that election in their favor. Specifically, appellants Melvin Brooks and Pearley Epling were candidates for membership on the Mingo County Board of Education, while appellants Estil L. Bevins and Mrs. Carl E. Riggs were candidates for membership on the Mingo County Democratic Executive Committee for Williamson District of said County. Following the tabulation of election results, the Board of Canvassers concluded that candidates other than appellants were duly elected to such offices. Those with most votes under the first tabulation results were Don Crum and Harry White, candidates for membership on the Board of Education, C. J. "Ben" Hamilton, as committeeman, and Mae Stallard, as committeewoman, for membership on the Democratic Executive Committee for Williamson District, all of whom are named appellees. Additionally, Charles E. Conley, Fred Goff and Clarence Justice are named appellees, each having been unsuccessful candidates for committeeman on the Democratic Executive Committee for Williamson District. Pursuant to the statutory procedure found in *W. Va. Code* 1931, 3-6-9, as amended, appellants demanded a recount of the election results. Upon recount by the County Court, sitting as the Board of Canvassers, the same results obtained as to appellants. The appellees, as previously named, were certified as elected to the disputed offices. Subsequently, the appellants instituted an election contest which eventually resulted in this appeal.

Proper and timely notice to all necessary parties was filed by the appellants as required by *W. Va. Code*, 3-7-6, as amended. The Mingo County Court, trier of election contests for county offices under Article VIII, Section 24 of the *West Virginia Constitution*, considered the testi-

mony and exhibits offered by the contestants in support of their allegations, and the rebuttal evidence offered by the contestees, and by split vote, one member abstaining, affirmed the initial election results as certified by the Board of Canvassers.

In their notice of contest, the contestants set forth certain grounds for the rejection of the vote as certified. Specifically, they charged that all votes cast in Precinct Nos. 2, 75 and 76 in Williamson District, should be rejected, deducted and removed from the county-wide vote totals of all candidates for the contested offices, due to the alleged illegal casting of a large number of votes after the statutory deadline of 7:30 o'clock p.m. They maintained that, since illegal votes were commingled with legal votes cast in these precincts, all votes in these precincts should be declared void. With respect to Precinct Nos. 2 and 46, contestants charged that a significant array of activities were engaged in by precinct officials on election day which are violative of the election laws of this State. More specifically, they asserted that certain election officials assisted some voters in marking ballots and casting votes, when such voters were not qualified under pertinent statutory provisions to receive assistance; consequently, that all votes cast under improper and illegal guidance and/or assistance of the election officials should be declared void; and that all legal votes commingled with illegal votes cast in these precincts should be disallowed also.

Finally, the appellants contended that, in each of the named precincts, the amount of illegal activity on the day of the contested election was of such magnitude that it effectively tainted, falsified and destroyed the integrity of the results in the precincts so as to render impossible a determination of the electorates' will therein, and thus, required that the entire precinct vote should be voided.

The judgment of the Mingo County Court and the judgment of the Mingo County Circuit Court on appeal did not affect the initial results of the election as to the appellant-contestants. It is from the judgment of the

circuit court on appeal the appellants prosecute their appeal to this Court as provided under *W. Va. Code* 1931, 3-7-7, as amended.

The dispositive issue on appeal to this Court is whether the circuit court committed error in its rulings of law and whether it was plainly wrong in its findings of fact. As a necessary prerequisite to our decision we must resolve these specific legal questions: (1) whether otherwise legal votes cast after the statutory deadline are illegal and void; (2) what voters are entitled to assistance by election officials when casting ballots; (3) whether otherwise legal and proper votes are voided by assistance from election officials to persons not qualified for such assistance; and (4) whether the entire vote should be voided, when legal and illegal votes are so commingled as to prevent a valid determination of the election results.

If any of the above legal issues be answered in appellants' favor, then this Court must consider two factual issues: (1) whether sufficient proof has been offered by appellants to sustain their allegations of statutory violations, and (2) whether sufficient illegal votes were cast in the challenged precincts and commingled with legal votes cast therein as to prevent a determination of the voters' true will.

We note at the outset that although the offices contested herein were voted upon in a primary election, they are, for the purposes of appellate procedures, controlled by the general election statutes. Since the primary election vote determines the offices herein contested (i.e. membership on the county board of education and on a political party executive committee), no further election is required, and the time limitations for final determination of primary contests are not applicable. *See, W. Va. Code* 1931, 3-5-6, and *Pinson v. Varney,* 142 W. Va. 105, 96 S.E.2d 72 (1956).

The first issue presented on this appeal, whether otherwise valid votes cast after the statutory deadline of 7:30 o'clock p.m. are voided, was answered by this Court in *Terry v. Sencindiver,* 153 W. Va. 651, 171 S.E.2d 480

(1969). In that case, Justice Caplan, in construing the provisions of *W. Va. Code* 1931, 3-1-31, as amended, to be mandatory, stated, in *syllabus* point 3., a holding of the Court:

> "Where it clearly appears in an election contest that persons were permitted to vote after the hour of seven-thirty o'clock in the evening, prescribed by Code, 1931, 3-1-31, as amended, as the time when the polls shall close, the votes so cast shall be illegal and void."

See also, *State ex rel. Lorentz v. Pierson*, 86 W. Va. 533, 103 S.E. 671 (1920). Therefore, if appellants offer sufficient proof that votes were cast after the statutory deadline, such votes must be voided.

The second and third issues, concerning what voters are entitled to assistance by election officials while casting their ballots, and whether otherwise legal votes are voided by assistance from officials to voters unqualified to receive assistance, raise matters not previously decided by this Court.

*W. Va. Code* 1931, 3-4-21, as amended, provides that certain eligible voters may be assisted in the operation of voting machines. Since voting machines were utilized in each of the contested precincts, the controlling statutory provisions are found in Article 4, of Chapter 3. Section 21 of this article provides:

> "Any duly registered voter, who shall have indicated on his registration record that he is unable, because of illiteracy or physical disability to write or whose physical disability, in the opinion of the election officers, prevents him from operation of the voting machine, may ask for assistance from two election officers of opposite political party affiliation to whom he shall thereupon declare his choice of candidates and his position on public questions appearing on the ballot labels."

This provision was adapted from a similar section found in Chapter 3, Article 1 of the *Code*, as amended, which contains the general provisions for and definitions of elections in this State. Section 34 of Article 1 provides,

among other things, that certain voters may be assisted by election officers in marking ballots where their registration records indicate their inability to write. In that instance, such voters may receive assistance by declaring their choices of candidates to the poll clerks who are then authorized to mark the ballot for them; alternatively, the poll clerks are authorized to indicate to such voters the relative position of the candidates' names on the ballot, after which such voters shall retire to the voting booth and mark their ballot. This section further provides that if a voter is unable to mark his ballot because of blindness and if he presents a doctor's certificate confirming such blindness, the poll clerks may allow the blind person to be assisted by a person of his choice.

A reading of these two provisions clearly indicates that active assistance to voters by election officials may be permitted only when the statutory prerequisites have been met. The only significant distinction between *W. Va. Code* 1931, 3-1-34, as amended and *W. Va. Code* 1931, 3-4-21, as amended, is that the former deals with votes cast upon written ballots, while the latter deals with votes cast upon voting machines.

In both sections, a necessary precondition to rendering assistance to voters is that their illiteracy must be shown unequivocally on the face of the voters' registration. Where no recordation of illiteracy is found thereon, and where an obvious physical disability which would prevent the voter from operating the machine is not present, no discretion is given election officials. They are without legitimate authority, whether requested by the voter or not, to enter the voting machine with him or to assist him in casting his vote. If further demonstration of the legislative intent is necessary, one need only examine *W. Va. Code* 1931, 3-4-14, as amended, which provides the procedure for assisting and instructing voters unfamiliar with electronic voting equipment, and *W. Va. Code* 1931, 3-4-22, as amended, which mandates: "[N]o person other than the voter alone may be in, about or within five feet of the voting machine during the time such voter is in the process of voting at any election,

and, during such time, no person may communicate in any manner with the voter ...", except as specifically provided by statute.

In *State ex rel. Dotson v. VanMeter,* 151 W. Va. 56, 150 S.E.2d 604 (1966), this Court held the requirement of *W. Va. Code* 1931, 3-1-34, as amended, to be mandatory. Although considering only that portion of the statute requiring the signature of two poll clerks of different party affiliation to appear on each ballot, the Court held that the section, being mandatory, could not be rendered ineffective by reason of ignorance, inadvertence or actual fraud by poll clerks. The court also held that, although the enforcement of this statute occasionally results in throwing out votes honestly cast, its provisions were clear and unambiguous and, as such, were to be applied and not construed. *See, State ex rel. Patrick v. Hancock County,* 152 W. Va. 592, 165 S.E.2d 822 (1969); *State ex rel. Bumgardner v. Mills,* 132 W. Va. 580, 53 S.E.2d 416 (1949); *Hallanan v. Hager,* 102 W. Va. 689, 136 S.E. 263 (1926); *Kirkpatrick v. Deegans,* 53 W. Va. 275, 44 S.E. 465 (1903).

In our opinion, the provisions of *W. Va. Code* 1931, 3-4-21, as amended, must be read in *pari materia* with the mandatory provisions of *W. Va. Code* 1931, 3-1-34, as amended.

Clearly the legislative objective manifested by enactment of both statutes was to insure each voter a free and deliberate exercise of his right to suffrage, preventing possible solicitation or interference in the exercise, and leaving him free to vote as he deems best. Quoting from Cooley's Cons. Lim. 757, this Court in *Daniels v. Simms,* 49 W. Va. 554, 39 S.E. 690 (1901), stated:

> " 'All such reasonable regulations of the constitutional right [to vote] which seems to the legislature important to the preservation of order in elections, to guard against fraud, undue influence, and oppression and to preserve the purity of the ballot-box, are not only within the constitutional power of the legislature, but are commendable and at least some of them absolutely essential.' " *Id.* at 574.

While we recognize the general rule that presumptions favor generally the correctness of action on the part of election authorities and specifically the regularity of votes cast and counted, we are equally cognizant of the legislative demand that certain protections are necessary for the preservation of the integrity and sanctity of the elective process. *Morris v. Board*, 49 W. Va. 251, 38 S.E. 500 (1901). It was held in *State ex rel. Willhide v. King*, 126 W. Va. 785, 30 S.E.2d 234 (1944) that where persons duly qualified to vote failed to comply with requirements of the statutes concerning registration, which were enacted to prevent fraud in elections, they forfeited their right to the franchise. In the instant case, asserted failures of the election officials to comply with mandatory statutory provisions may have destroyed the validity of the votes cast under their supervision.

If appellants have offered sufficient proof of their charges that assistance was given by election officials to voters who were not qualified to receive assistance, then their votes must be voided.

This Court has addressed the third legal issue of the appeal, the question of commingling legal and illegal votes. In *Terry v. Sencindiver, supra*, the Court succinctly formulated the legal test to be applied:

> "Where illegal votes have been cast and have been commingled with the valid votes received in a precinct, making it impossible to purge such illegal votes, the entire vote of the precinct must be rejected if it appears that sufficient illegal votes were cast to affect, or leave in doubt, the result of said election." *Syllabus* point 4., *id.*

*See also, State ex rel. Booth v. Board of Ballot Commissioners*, W. Va., 196 S.E.2d 299 (1973); *Hatfield v. Scaggs*, 101 W. Va. 425, 133 S.E. 109 (1926).

Appellants contend on appeal that in each of the contested precincts they have conclusively proved illegal votes sufficient in number to have prevented a true determination of the voters' will; conversely, appellees

maintain such proof has not been offered and that the election results originally certified and subsequently modified and affirmed by the circuit court as to the contested offices are correct.

For purposes of clarification, the election results in the precincts contested as certified by the Board of Canvassers and affirmed by the county court at the conclusion of the contest hearing are as follows:

## FOR DEMOCRATIC EXECUTIVE COMMITTEE FOR WILLIAMSON DISTRICT

(Male):

| Candidate | No. votes from Precinct No. 2 | District Total |
|---|---|---|
| *Estil L. "Breezy" Bevins | 67 | 624 |
| **Charles E. Conley | 12 | 207 |
| **Fred Goff | 3 | 32 |
| **C. J. "Ben" Hamilton | 89 | 629 |
| **Clarence Justice | 3 | 41 |

## FOR DEMOCRATIC EXECUTIVE COMMITTEE FOR WILLIAMSON DISTRICT

(Female):

| Candidate | No. votes from Precinct No. 2 | District Total |
|---|---|---|
| **Mae Stallard | 107 | 735 |
| *Mrs. Carl E. Riggs | 48 | 719 |

## FOR ELECTION TO MEMBERSHIP ON MINGO COUNTY BOARD OF EDUCATION

| Candidate | Votes by Precinct No. | | | | County-wide Total |
|---|---|---|---|---|---|
| | 2 | 46 | 75 | 76 | |
| *Melvin Brooks | 73 | 70 | 197 | 109 | 5,241 |
| **Don Crum | 144 | 427 | 218 | 145 | 5,379 |
| *Pearley Epling | 66 | 64 | 151 | 72 | 5,241 |
| **Harry White | 143 | 423 | 229 | 179 | 5,511 |

*Appellant-contestant
**Appellee-contestee

In Precinct Nos. 75 and 76, the appellants proved and the lower court found that some votes were cast after the statutory deadline of 7:30 o'clock p.m. Specifically, seventy-eight late votes were cast in Precinct No. 75, of which fifty-nine were Democratic votes and nineteen were Republican votes. In Precinct No. 76, the court found thirteen Democratic and four Republican votes were cast in violation of the 7:30 o'clock p.m. deadline. On these findings, the circuit court held all late votes, cast in violation of *W. Va. Code* 1931, 3-1-31, as amended, invalid and void. That court also held that the substantial number of late votes cast in Precinct No. 75 compelled it to void the entire precinct vote cast for the Board of Education offices and one other office unrelated to this appeal; but that the insignificant number of late votes cast in Precinct No. 76 did not affect the contested offices and would not warrant voiding the entire precinct vote cast for these offices. We find the rulings of the lower court on these factual determinations amply supported in the record and correct at law. *Terry v. Sencindiver, supra.*

Viewing the charges of illegal procedures alleged to have occurred in Precinct Nos. 2 and 46, the lower court found that election officials had committed certain improper and illegal acts which either intimidated, or interfered with, or influenced a few voters in the casting of their ballots. In particular, the court found such acts occurred in Precinct No. 2 in five instances, resulting in the invalidation of one Democratic and four Republican votes. For essentially similar factual occurrences and for the same legal reasons, the court also declared illegal and void five Democratic votes and one Republican vote cast in Precinct No. 46. These rulings of the lower court are supported by the record and are legally unassailable. *See, Hatfield v. Scaggs,* 101 W. Va. 425, 133 S.E. 109 (1926).

The major charge made by appellants in regard to the conduct of the election at Precinct No. 46 was:

"(a) that only a small percentage of the total of 529 votes officially certified as cast at that pre-

cinct were in fact cast by the voters whose names appear on the poll slips returned with the election supplies from that precinct, the balance thereof, totalling well over 50 percent of the votes cast on the one and only voting machine at that precinct having been fradulently, corruptly and unlawfully voted by the election officers serving in the polling place in that precinct or persons unlawfully working in concert with them with the criminal and lawless design to steal the election for candidates of another faction in a manner so indifferent to, and defiant of, the will of the voters and the laws of this State."

From its review of the evidence, the circuit court found "that all persons whose votes were certified as cast at that precinct did in fact personally appear at that precinct on election day and vote thereat." Following that finding, however, the circuit court summarized the evidence and also found facts as follows:

"The Court finds that of the total of some 232 persons who testified they voted at that precinct, 121 of them received assistance in voting by election Commissioners Wellman and/or Marcum, the evidence in this regard being undisputed, except that a very few of the 121 persons testified that only one of those election officials was behind the curtain of the voting machine when such assistance was rendered, while those Commissioners both testified (Transcript, Vols. XXX, p. 134, as to Wellman, and XXX, p. 177, as to Marcum) that both of them were always behind the curtain thereof when assistance was being given any voter. There is no evidence that any of the other election officers at that precinct rendered assistance to any voter in casting his vote. Those two Commissioners further testified that they rendered assistance to all voters requesting it, which may have amounted to 75 per cent, though they believed it was not over 50 per cent, of all voters who voted at that precinct, and that they did so without first ascertaining, as is required by W. Va. Code, 3-4-21, before assistance in using a voting machine may lawfully be requested by a

voter, either that any voter had a physical disability which, in the opinion of those Commissioners, prevented him from operating the machine, or that the voter had indicated on his registration record that he was unable, because of illiteracy or physical disability, to write, and did so without requiring any voter to present a doctor's certificate that the voter was blind, as is required by W. Va. Code, 3-1-34, which deals with the rendering of assistance to blind persons in the use of paper ballots.

"By the court's count, the registration records of only 4 of the persons who were assisted by the Commissioners indicated that they were illiterate, namely, Esther Matthews (Exhibit D-8), showing her to have signed the registration record by use of a mark and having noted thereon "Can't write"; Smith Vance (Exhibit D-32) whereon he was indicated to be "Illiterate"; Thomas Marcum (Exhibit D-22) on which he is shown to have signed the registration record by his mark; and Maggie Porter (Exhibit D-107) on which she is shown to have signed the registration record by her mark.

"The reasons for requesting assistance given in the testimony of another five of the 121 persons were that they could not see, could not see to vote, could not see good and could not read or write, though none of the registration records of those five persons so indicated, and the remainder of the 121 persons gave reasons for their requesting assistance such as that they could barely read, or could read only "printing" and not "writing", or that they failed to bring their eyeglasses to the polls, or were unfamiliar with voting machines, or were in a hurry and did not want to take the time to familiarize themselves with the ballot, and the like. The court finds a great many of the 121 persons were actually illiterate for all practical purposes. One junior in college requested and was given assistance."

Commissioners Wellman and Marcum testified that they did not interfere with the free will of any voter in

the selection of any candidate, and that in assisting voters, "neither of them caused any vote to be cast that any voter assisted by them did not want to cast, nor did either cause any vote not to be cast that any such voter desired to be cast." The circuit court apparently felt that it was incumbent upon appellants to overcome the burden of this particular testimony. In our view the election officials' actual effect upon a voter's free choice is neither compelled nor significant.

Where mandatory preconditions prescribed by statute are not satisfied before assistance is extended to voters by election officials, it is the act of assistance *per se* which is unlawful. When a physically able voter, who has not satisfied statutory requirements for seeking assistance in voting, receives assistance in the casting of his ballot from election officials, the vote so cast is void. We are likewise compelled to hold that mere unfamiliarity with the use of voting machine procedures is not a physical disability which invokes a statutory right in the election official to render assistance to the voter.

Since we are in obvious disagreement with the circuit court's interpretation and application of *W. Va. Code* 1931, 3-4-21, as amended, its factual findings on this charge regarding Precinct No. 46 must be re-evaluated. It appears that 121 of 232 voters who testified—over 50%—received assistance from election officials in casting their ballots. All but four, who had notations of illiteracy upon their registration rec-ord, received assistance when legal necessity therefor was not shown. In good conscience, we cannot purge this large block of votes from the precinct total and leave the remainder inviolate. The void votes are in such substantial number, representing over 50% of those testifying to illegal assistance, that we are impelled to believe the true will of the voters in this precinct cannot be ascertained. Following the test of *Terry v. Sencindiver, supra,* we hold that the total vote cast in Precinct No. 46 must be rejected, deducted and removed from the aggregate county-wide vote for all candidates for membership on the

Mingo County Board of Education. Accord: *Hatfield v. Scaggs, supra.*

The appellants assigned numerous other points of error in the determinations of the circuit court. We have carefully reviewed the record upon which those decisions were made and are of the opinion that the remaining error assignments are without substance. We recognize and follow the general rule applicable to review of factual determinations made by lower courts in election contests, as stated in C.J.S. *Elections* § 314 (1965):

> "While the appellate court may examine the record in order to reach an independent conclusion, it merely determines whether the conclusions of law are warranted by the findings of fact, and it will not, as a general rule, disturb findings of fact on conflicting evidence unless such findings are manifestly wrong or against the weight of the evidence."

The vote totals and results of the election for the office of Democratic Committeeman and Committeewoman for Williamson District, previously declared by the circuit court, are unaffected by the decision.

Taking the election results as modified by the circuit court, and then excluding all the ballots cast in Precinct No. 46 in accordance with this decision, we find the result of the election as to the parties to the contest for membership on the Mingo County Board of Education as follows: Melvin Brooks received 4,975 votes; Don Crum received 4,687 votes; Pearley Epling received 5,023 votes; and Harry White received 4,806 votes.

The final order of the Circuit Court of Mingo County is affirmed in part, reversed in part, and the case is remanded for disposition in accordance with the principles expressed in this opinion.

*Affirmed in part;*
*reversed in part;*
*remanded with*
*directions.*