### SAILOR *v.* RANKIN.

#### Opinion delivered October 23, 1916.

1. ELECTION CONTESTS—REJECTION OF AN ENTIRE POLL.—The power to reject an entire poll should be exercised only in extreme cases, where it is impossible with reasonable certainty to ascertain the true vote.

2. ELECTION CONTESTS—FRAUD—REJECTION OF ENTIRE POLL.—Where, in a given precinct, it is shown that fraud was promiscuously committed by the election officials which affected the result to an extent, the exact limits of which it is impossible to ascertain from the testimony, and which fairly draws into question the integrity of the whole return, the same should be thrown out entirely and omitted from the

count, leaving each party the opportunity to prove by other evidence the number of legal ballots actually cast.

3. ELECTION CONTESTS—FRAUD—EXCLUSION OF ENTIRE RETURN.—The evidence held sufficient to justify a finding that the entire returns from an election in certain townships should be rejected as unworthy of credit.

4. REMOVAL OF COUNTY SEAT—RESULT OF ELECTION.—In an election to determine the removal of the county seat of Perry County, *held,* that the vote was in favor of a removal from the present county seat, but that the election did not determine to what place the county seat should be removed.

5. ELECTION CONTEST—REJECTION OF ENTIRE POLL—BURDEN OF PROOF. Where an entire poll is rejected, it devolves upon each party to the contest to adduce proof, other than the certificates of the returns, to establish the number of legal votes cast.

6. ELECTION CONTEST—REMOVAL OF COUNTY SEAT—PLACE OF REMOVAL—JURISDICTION OF CIRCUIT COURT.—Where the contest is heard in the circuit court on appeal from an order of the county court, and it is adjudged there that a majority of the votes were for removal, but not for either place proposed, the circuit court has jurisdiction to order an election to determine the place to which the removal shall be made.

Appeal from Perry Circuit Court; *G. W. Hendricks,* Judge; affirmed in part and reversed in part.

*Sellers & Sellers,* for appellants.

Nothing done to the returns after the election will affect the election or change the burden of proof. *Webb v. Bowden,* 141 Pac. 652. The pleadings were too indefinite. 33 S. W. 669; 83 Pac. 393; 11 Am. St. 857; 1 Brewst. 26; 49 N. E. 488; 33 S. E. 718; 95 S. W. 676. When amended pleadings setting up new facts may be filed. 6 W. Va. 713; 23 Pac. 84; 159 S. W. 632; 159 S. W. 641; 111 Ark. 398; 61 Ark. 253; 58 Am. St. 239. When the whole poll must be cast out. 61 Ark. 111. The evidence of the ballots overcomes the returns. 79 N. W. 1018; 86 Ark. 269; 93 N. E. 291; 19 S. E. 557; 53 S. E. 706; 82 S. W. 1023. The result of an election should not be lightly set aside. 70 S. W. 668; 68 S. W. 1076; 70 S. W. 673. The ballots *prima facie* reflect the result of the election. 94 Ark. 482; 166 S. W. 762; 61 Ind. 392; 24 Pac. 258; 36 Ark. 446. They constitute the best evidence. 28 Cal. 124; 65 Cal. 58; 2 Pac. 737; 67

Cal. 303; 7 Pac. 738; 108 Cal. 101; 41 Pac. 454; 49 Am. St. 68; 29 L. R. A. 673; 27 Mich. 116; 114 Ky. 312; 70 S. W. 52; 75 S. W. 257; 89 S. W. 1; 94 Ill. 515; 91 Md. 626; 46 Atl. 1025; 108 Ill. App. 631; 8 N. D. 484; 79 N. W. 1018; 184 Ill. 552; 56 N. E. 1012; 64 N. E. 292. The presumption is that public officers do their duty. 11 Ark. 212; 22 Ark. 79; 24 Ark. 407; 31 Ark. 39; 32 Ark. 772; 45 Ark. 298; 25 Ark. 314; 5 B. & Adol. 546; 12 Wheat. 69; 94 Ark. 221; 95 Ark. 438; 96 Ark. 477; 50 Ark. 276. It will not be presumed that one violated the law. 67 Ark. 278; 34 Ark. 518; 97 Ark. 212; 82 S. W. 1023.

2. The burden is upon the contestant to show that the ballots have been tampered with. 7 Pac. 739; 28 Cal. 133; 2 Pac. 727; 79 N. W. 1021; 12 S. W. 107; 27 Mich. 116. The presumption arising from the identity of names is overcome by the presumption in favor of the regularity of official action. 60 S. W. 129; 42 N. E. 727; 4 Wend. 283; 22 S. W. 333; 5 Mon. 422; 2 Ill. 128; 8 Me. 75; 7 Cal. 279; 94 Ark. 481; 73 Ark. 187; 50 Ark. 85. Presumption as to genuineness of the ballots. 49 Ark. 24; 9 R. C. L. 1164; 50 Ark. 95; 30 Cal. 325; 2 Swan. 68; 22 Barb. 72; 77 Am. St. 306. To prove a vote illegal, the evidence must be conclusive. 22 Pac. 225; 61 Ind. 392; 33 La. Ann. 398; 133 Am. St. 939; 4 Wis. 420; 12. Wis. 551; 16 Wis. 146. It can not be proved that the voter intended to vote for one man when the ballot was cast for another. 5 Denio 409; 27 N. Y. 45; 84 Am. Dec. 242; Cooley's Const. Lim. 611; 25 Am. St. 215; 10 Am. St. 318; 35 S. W. 544; 33 S. W. 400. Burden on contestant to show disqualification of voter. 108 Ark. 301; 39 Pac. 327; 84 Am. Dec. 268; 78 Ill. 170; 60 How. Pr. 471. Failure to call judges to show irregularities. 61 Ark. 256; 73 Ark. 193. Where the returns are impeached, they are evidence of nothing. 119 Pac. 220; 63 Ill. 405.

*Mehaffy, Reid & Mehaffy, John L. Hill* and *J. H. Bowen,* for appellee.

When returns will be thrown out for fraud.  69 Ark. 501; McCrary on Elec. 449.  A voter may contradict a ballot.  94 Ark. 483.  The ballots are primary evidence of the result and must stand until impeached. 94 Ark. 478; *Bowden* v. *Webb*, 124 Ark. 244.  Burden of maintaining the legality of the official count.  63 Ark. 175· 86 Ark. 259.

*Sellers & Sellers*, in reply.

McCulloch, C. J.  This is an appeal from the judgment of the circuit court of Perry County in a proceeding instituted to contest the result of an election held for the purpose of voting on the proposed removal of the county seat of that county from Perryville. There were two towns to which a removal was proposed, Perry and Bigelow, and each of those places received a very substantial number of votes.  The county election commissioners rejected the returns from four precincts and omitted them from their return to the county court. On the hearing of this contest in the circuit court on appeal from the county court, it was conceded by both sides to the contest that the elections held in those four townships, and two others, were void, and that the returns from the six townships should be entirely excluded, which the circuit court accordingly did.

The face of the returns, with those six townships excluded, showed the following result:  Total vote, 1869; for removal, 1,264; against removal, 594; for Bigelow, 1,175; for Perry, 635.  The clerk's certified list of persons who had paid poll tax for the preceding year showed a total of 2,004 qualified electors.  It thus appeared from the face of the returns that a majority of the votes  cast at the election and also a majority of the total vote according to the number of poll taxes paid, was in favor of the proposal to remove the county seat and to establish the same at the town of Bigelow. Certain citizens thereupon instituted a contest in the county court on behalf of the town of Perry over the question of removal to Bigelow, and subsequently the appellees instituted a like proceeding on behalf of the

town of Perryville contesting the vote on said removal, and the vote in favor of Bigelow.

Appellants filed their response on behalf of the town of Bigelow, and also a counter contest asking for the exclusion of the returns from the six townships already referred to. Each of the contests was based on alleged irregularities and frauds in four townships, constituting separate voting precincts, viz.: Casa, Roland, Houston and Perry, the last named township being the one in which the town of Bigelow is situated.

When the case was called for trial in the circuit court, the contestants on behalf of the town of Perry, withdrew their contest, and the cause proceeded to trial upon the contest of appellees on behalf of the town of Perryville. The court sustained the returns as made by the election officers in Houston and Perry townships, but excluded the vote from the other two townships, holding that the charges of fraud had been sustained. The circuit court decided, however, that the contestees had established the validity of 30 votes cast in Roland Township in favor of removal and in favor of Bigelow, and also had established the validity of 13 votes in Casa Township. It was therefore adjudged that the proposal to remove the county seat from Perryville, and the votes in favor of Bigelow, did not constitute a majority of the electors, and that both propositions had been lost. The contestees thereupon prosecuted the appeal to this court.

It is only necessary for us to review the decision of the court with respect to the election in Casa and Roland Townships, for in all other respects the decisions of the trial court were in favor of appellants.

It is contended, in the first place, that neither the pleadings nor the testimony warranted the judgment of the court excluding the returns from Casa and Roland townships. It is argued that the petitions for contest only attack the validity of specifically mentioned ballots in those two townships, and did not question the integrity of the returns as a whole. We find, however, on examination of the petition, that it is charged

therein that the judges "committed such fraud and misconduct in the holding of said election in each of said precincts as to render the election therein void," and that the fraud and misconduct consisted of permitting a large number of persons to vote who were not qualified electors, some of whom did not reside in the precinct or county; that the election officers in said township electioneered with voters in the polling places, and that they fraudulently registered as voting certain persons who did not appear at all at the polls, and that they fraudulently changed the ballots of voters who cast their ballots against removal, so as to show that the same had been cast in favor of removal.

While the rule is that pleadings in a special statutory proceeding of this kind should be construed with some strictness, that does not mean that there should be such a technical construction of the pleadings as would defeat the obvious meaning and intention of the pleader. It was obviously the intention of the contestants to attack the validity of the whole return in each of the four townships mentioned, and it would be a very narrow interpretation of the language used in the petition to say that it was only intended to exclude certain votes. This intention is very plain when considered in connection with the fact that substantially all of the votes in those four townships were in favor of removal, and in favor of the town of Bigelow, and the effort of contestants was to show fraud of a general nature which would destroy the integrity of the returns of the election officers.

(1-2) In support of the contention that the proof is insufficient to show such fraud as would warrant an exclusion of the whole poll of the two townships mentioned, learned counsel rely upon the rule which the authorities cited in their brief show to be well established, to the effect that the power to reject an entire poll being a dangerous power, "it should be exercised only in extreme cases, that is to say, in a case where it is impossible to ascertain with reasonable certainty the true vote." McCrary on Elections, section 523; *Patton* v.

*Coats,* 41 Ark. 111; *Webb* v. *Bowden,* 124 Ark. 244. On the other hand, it is equally well settled that where, in a given voting precinct, it is shown that fraud was promiscuously committed ky the election officers which affected the result to an extent, the exact limits of which it is impossible from the testimony to ascertain, and which fairly draws in question the integrity of the whole returns, the same should be thrown out entirely and omitted from the count, leaving each party the opportunity to prove by other evidence the number of legal ballots actually cast. *Rhodes* v. *Driver,* 69 Ark. 501.

(3) We have here a finding of the trial judge to the effect that the fraud was sufficiently proved to justify the exclusion of the whole of the returns from Casa and Roland townships, and our sole inquiry here is directed to the question whether or not the testimony is legally sufficient to support the findings of the trial court. *Schuman* v. *Sanderson,* 73 Ark. 187.

An analysis of the testimony shows that there was proof tending to establish the following with respect to Casa township; that each of the election officers were partisans of the proposition to remove from Perryville to Bigelow; that some of the election officers on the day of the election left the polling place and went to the residence of a certain voter who was ill and received his ballot there and carried it back to the polling place and deposited it in the ballot box; that the officers permitted six persons to vote who were not qualified electors; that the returns showed that 11 persons voted who did not attend the election at all, and that the ballots of 8 voters were changed after they were handed in by the respective voters to the election officers. A recount of the ballot also shows that Bigelow was returned as receiving 4 more votes, and Perry received 4 less votes, than shown in the certified returns. There was also testimony tending to show that the poll books were rewritten and substituted after the election, so as to show the change of the names of 42 electors. One of the witnesses introduced by appellees

testified that he procured the poll books from the election officers and in their presence made a copy of the same, and when this copy was compared with the returns on file with the election commissioners it was found that 42 names had been changed. The total number of votes shown by the returns to have been cast in Casa township was 145, and the testimony just referred to, if accepted as true, was sufficient to show frauds of such general nature as affected the validity of the whole returns.

The proof with respect to Roland township tends to show that out of the total poll of 110 votes, there appeared 34 names of persons who had not paid their poll taxes in the county; that the election officers placed in the box ballots purporting to be those of five persons who did not appear at all at the polling place; the officers concede that this is true as to two of the ballots; that two other persons were permitted to vote who were not qualified electors and who so informed the election officers at the time, but that the officers insisted that they go ahead and vote. This testimony, if given full credence, was legally sufficient to warrant a finding that the entire returns from the township should be rejected as being unworthy of credit.

It is contended finally that upon the findings of fact made by the court, even with the exclusion of the two townships, a majority of the votes were in favor of removal from Perryville and in favor of Bigelow, and that the judgment should have been against the contestants. After careful consideration of the findings of the court, we are of the opinion that this contention is sound with respect to the vote for removal from Perryville, but that the contention can not be sustained as to the finding in respect to the vote in favor of Bigelow.

The Constitution of 1874 provides that "No county seat shall be established or changed without the consent of a majority of the qualified voters of the county to be affected by such change, nor until the place at which it is proposed to establish or change such county

seat shall be fully designated." (Art. XIII, section 3.)
The statute now in force provides that "the number
of the persons who have paid their poll tax, as shown
by the list of persons who have paid their poll tax as
filed with the county clerk by the collector," shall gov-
ern the county court in ascertaining the number of
qualified voters of the county in a proceeding for the
removal of the county seat. Kirby's Digest, section
1125.

(4-5) The validity of a somewhat similar statute,
prescribing, however, a different test, was upheld by
this court, as being not in conflict with the Constitu-
tion, in the case of *Vance* v. *Austell*, 45 Ark. 400, where
the court held that the statute and the Constitution,
when construed together, created a double test requir-
ing that the votes in favor of removal must constitute
a majority of those actually voting at the election, and
also of the list prescribed by the statute. Now, the
proof shows in the present case that there were 2,004
poll taxes paid in the county, a majority of which would
be 1,003. The total vote actually cast was, according
to the findings of the trial court, less than the number
on the certified list of paid poll taxes. That is to say,
taking the returns of the townships, exclusive of the
six that were thrown out, and then deducting the total
vote from Casa and Roland townships and adding the
43 legal votes shown to have been cast in those town-
ships, makes a total of 1,657 votes cast at the election.
The total vote being less than the number of certified
poll taxes, the latter controls. Therefore, we must
accept that as the proper test of determining the num-
ber of votes necessary to constitute a majority. There
were returned in favor of Bigelow 1,175 votes, including
Casa and Roland townships, and after deducting the
total number (240) cast in favor of Bigelow in those
townships and adding the 43 votes found by the court
to have been legally cast in those two townships in
favor of Bigelow, it makes the total in favor of Bigelow
978, which is 25 votes less than is necessary to constitute

a majority according to the certified list of poll taxes paid in the county.

It is contended by learned counsel that under the pleadings and undisputed facts, 54 more votes should be counted in favor of Bigelow, but this contention is predicated upon the view that those votes should be counted in computing the result for the reason that they are not successfully attacked in the proof. The rule is, however, that when the entire poll is rejected, it devolves upon each party to adduce proof, other than the certificates of the returns, to establish the number of legal votes cast. *Rhodes* v. *Driver, supra.* The burden was therefore on appellants to prove the number of votes cast in favor of Bigelow in those two rejected townships, and they have failed to prove more than the number found in their favor by the court. So we can not sustain the contention that the undisputed proof shows a majority in favor of removal to Bigelow.

The state of the case is different, however, with respect to the vote on the question of removal from Perryville. There were 1,264 votes returned in favor of the removal proposition, exclusive of the six townships which were rejected from the returns. Out of this number a total of 239 were in favor of the removal in Casa and Roland townships, and after deducting this number from the total and adding the 43 votes found by the court to have been legally cast in favor of the proposition, it leaves a total of 1,068 votes in favor of removal, which constitutes a majority of the voters who paid poll taxes and of the votes actually cast at the election. We are of the opinion, therefore, that the court erred in its judgment declaring that the vote in favor of removal had failed to carry. The statute provides that "if such majority of the qualified votes, although given in favor of a change or removal from the existing location, be not given for the place (or one of the places, if more than one place be submitted), to which the change or removal is proposed to be made, the proposition shall be considered as rejected,

and it shall be the duty of the county court, at its next regular meeting, to order a new election, to be governed in all respects like the first, except at the second election  the original county seat and the one receiving the next highest vote at the first election shall be put in nomination and voted for at said second election." Kirby's Digest, section 1121, as amended by Act of May 31, 1909, p. 891.

(6)  Where the contest is heard in the circuit court on appeal from an order of the county court, and it is adjudged there that a majority of the votes were for removal, but not for either place proposed, the circuit court has jurisdiction to order an election to determine the place to which the removal shall be made. *Neal* v. *Shinn,* 49 Ark. 227.

The judgment of the circuit court is therefore affirmed insofar as it declares that a majority did not vote in favor of either of the two places proposed for removal; but the judgment declaring that the proposed removal from Perryville failed to carry is reversed, and the cause remanded with directions to the circuit court to enter a judgment in accordance with the statute, ordering a new election to determine the location of the county seat as between Perryville, the old county seat, and Bigelow, the other candidate.