LUKE E. TERRY

*v.*

VANCE E. SENCINDIVER

(No. 12883)

Submitted November 18, 1969. Decided December 16, 1969.

652

*Charnock & Charnock, John N. Charnock, Jr.,* for petitioner.

*Martin & Seibert, Clarence E. Martin, Jr.,* for respondent.

CAPLAN, JUDGE:

This is an appeal from a decision of a special court convened pursuant to the provisions of Code, 1931, 3-7-3, as amended, for the purpose of determining which of two candidates was the duly elected Judge of the 31st Judicial Circuit.

At the general election held on November 5, 1968, the appellant, Luke E. Terry, sometimes referred to an "contestant," was the candidate of the Republican Party and the appellee, Vance E. Sencindiver, sometimes referred to as "contestee," was the candidate of the Democratic Party for the office of Judge of the 31st Judicial Circuit. This circuit is comprised of the counties of Berkeley, Jefferson and Morgan. At the conclusion of the canvass of the votes each of the aforesaid parties demanded a recount in each of the three counties. Such recounts were

conducted and the result of the election was certified to the Secretary of State. The certification showed Mr. Sencindiver to be the winner by a margin of six votes and a certificate of election was duly issued to him. He is presently holding the office of Judge of the 31st Judicial Circuit.

Mr. Terry, desiring to contest the said election, filed his petition dated December 20, 1968, with the Honorable Hulett C. Smith, Governor of the State of West Virginia, pursuant to the provisions of Code, 1931, 3-7-3, as amended, and caused a notice of contest of election to be served upon the contestee. In his petition the contestant prayed that a special court be convened pursuant to the aforesaid statute to hear and determine all matters in contest in relation to this election and that he be declared duly elected to the subject office during and for the term beginning January 1, 1969. Mr. Terry therein designated D. H. Rogers, Jr., of Martinsburg, West Virginia, as his choice to serve as a member of the special court. C. Samuel Trump, of Berkeley Springs, West Virginia, was designated by Mr. Sencindiver, the contestee, as his selection as a member of the special court.

By Executive Order No. 1-69 the Governor appointed as the third member and presiding officer of the special court the Honorable K. K. Hall of Madison, West Virginia. The court was therein further directed to decide the election contest according to the law and evidence submitted to it and to certify its decision to the Governor. Accordingly, the case was considered upon the pleadings, sworn testimony, depositions and other evidence and by letter dated July 11, 1969, the decision of the court was submitted to the Honorable Arch A. Moore, Jr., Governor of the State of West Virginia. Along with the decision was forwarded the majority opinion which was written by Mr. Trump and concurred in by Mr. Hall. The opinion reflecting the decision of the court concluded as follows:

> "It is the conclusion of the undersigned member
> of this Special Court that Vance E. Sencindiver

is the winner of the Judgeship of the 31st Judicial Circuit of West Virginia by a total margin of 46 votes.

"If however the results of Precinct 38 are not excluded from the count, as I believe they ought to be, it would be my conclusion that Vance E. Sencindiver is the winner of said Judgeship by a total margin of seven votes."

The minority opinion was submitted by Mr. Rodgers and expressed the view that "Luke E. Terry should be declared elected by a majority of 5 votes." It is from the decision of the majority that this appeal is prosecuted, the petition for appeal having been filed in the office of the clerk of this Court on August 9, 1969.

On September 3, 1969 the contestee filed his motion requesting that the petition of the contestant be dismissed on the ground he did not present his petition to the Supreme Court of Appeals or a judge thereof in vacation within the thirty-day period as provided by the statute. His contention is that filing with the clerk of the Court does not satisfy the statutory requirements and that neither the Court nor a judge in vacation issued any suspending order as allegedly required by the statute. Furthermore, the contestee contends that the contestant failed to sufficiently designate the errors committed by the special court.

The contestant in his petition questioned the validity of twenty-two ballots. In his answer the contestee submitted for consideration the validity of twenty-eight ballots. His answer further alleged that as a result of certain illegal practices in the conduct of the election at Precinct No. 38, Opequon District, Berkeley County, all votes cast at such precinct for this office should be rejected.

In relation to said Precinct No. 38 it is undisputed that 50-75 voters were permitted to vote after 7:30 P.M., the hour designated by the statute as the time when the polls shall be closed. It appears in the testimony and is undisputed that 50-75 voters were in line at the aforesaid closing time and that they were allowed to come into the building

where the voting booths were located; that the outside doors were then locked and no one else was permitted to enter; and that voting by this group was not concluded until approximately 8:40 P.M. It is further admitted that these ballots were cast and commingled with all other ballots cast at that precinct. The decision of the special court in relation to Precinct No. 38 is based on its belief that the statute relating to the time for the closing of the polls is mandatory; that all votes cast after the said closing time are void; and, that such ballots being commingled with all the votes cast would require the exclusion of votes cast in that precinct.

It was candidly admitted by counsel for the contestant, and such admission is borne out by the record, that if the special court were correct in excluding all of the votes cast in Precinct No. 38, the contestant could not prevail. The question thus presented is whether the provisions of the Code, 1931, 3-1-31, as amended, which provides in part: "The polls shall be opened *** at six-thirty o'clock in the forenoon and be closed at seven-thirty o'clock in the evening" are mandatory or merely directory.

In relation to the contestee's motion to dismiss this appeal it is noted that the language of the statute, Code, 1931, 3-7-3, as amended, provides that either party may appeal from the final decision of the special court by presenting his petition in writing "to the supreme court of appeals, or a judge thereof in vacation * * *." Compare this language to that used in Code, 1931, 58-5-3, which provides for the usual appeal to this Court, the pertinent part of which reads: "Any person * * * wishing to obtain a writ of error, appeal or supersedeas * * * may present a petition therefor *to the supreme court of appeals, or to a judge thereof in vacation* * * *." (Italics supplied) The same language is used in each statute in relation to the manner of presenting a petition for appeal. No one has ever questioned the propriety of filing a petition for appeal from a circuit court with the clerk of this Court, nor is such procedure open to question. In view of the language used with respect to an appeal from a special court, we

are firmly of the opinion that the filing of such petition with our clerk effects a proper presentation of the petition "to the supreme court of appeals." Therefore, the motion to dismiss is without merit and is overruled.

We come now to the consideration of the question raised by the answer of the contestee—whether, by reason of the casting of votes after the hour of 7:30 P.M. and the commingling of those votes with all the votes cast in Precinct No. 38, the special court properly excluded all the votes in said precinct from the totals cast for the parties.

The legislature has prescribed in clear and unequivocal language the specific day on which an election shall be held. Code, 1931, 3-1-31, as amended. In the same statute it also provided that "the polls shall be opened * * * at six-thirty o'clock in the forenoon and be closed at seven-thirty o'clock in the evening." The precise question as to whether this provision for closing the polls "at seven-thirty o'clock in the evening" is mandatory or directory has never been presented to this Court, although a closely related matter has been considered.

In *State ex rel. Lorentz* v. *Pierson,* 86 W. Va. 533, 103 S. E. 671, the Court said that an election required by law to be held at a particular time will be void if held at a time different from that provided by the statute. Expressing its concern, should the provisions of this statute be violated, the Court said: "To allow those charged with the execution of the election laws to change the time for holding elections to suit the convenience or interest of themselves or their friends would result in fraud and injustice to such an extent that the title of every officer would be brought into disrepute."

While the *Pierson* case differs factually from the instant case in that the former relates to the day that the election shall be held and the latter to the hours of that day during which the polls shall be open, we believe that the ruling of the Court is applicable here. The word "shall" is used in Code, 1931, 3-1-31, as amended, wherein the

day of the election is prescribed. This Court has said in the *Pierson* case that such provision is mandatory and that deviation therefrom is impermissible. In the same statute it is provided that the polls "shall" be open only for the hours therein specified. We perceive no reason to afford to the word "shall," where it pertains to hours in the aforesaid statute, any less force than that assigned to it by the Court where it relates to the day of election.

The Court has held on numerous occasions that the word "shall" connotes a mandatory duty. In *Board of Trustees* v. *The City of Huntington,* 142 W. Va. 217, 96 S. E.2d 225, the Court said: "Axiomatic in the law of statutory construction is the postulate that the word 'shall', in the absence of something in the statute showing a contrariwise intent on the part of the Legislature, should be construed in a mandatory sense." Holding that the word "shall" in a statutory provision relating to elections was mandatory in nature, the Court, in *Baer* v. *Gore,* 79 W. Va. 50, 90 S. E. 530, made the following comments: "The provisions of the enactment are expressed in imperative terms. They are positive and unequivocal. Generally 'shall', when used in constitutions and statutes, leaves no way open for the substitution of discretion. * * * All authorities coincide in holding mandatory all statutory requirements, although contained in an election law, if it appears reasonably certain the legislature intended them to have that effect." See *In Re Mann,* 151 W. Va. 644, 154 S. E.2d 860; *State ex rel. Staley* v. *The County Court of Wayne County,* 137 W. Va. 431, 73 S. E.2d 827; *Black's Law Dictionary,* 4th Ed., 1541.

Code, 1931, 3-1-31, as amended, provides in clear, positive and unequivocal language that the polls shall close at seven-thirty o'clock in the evening. This is imperative language and there is nothing in the statute which shows a legislative intent to consider it other than in a mandatory sense. In the conduct of an election it is essential that definite hours be prescribed during which the voters may cast their votes. The failure to so provide could readily open an avenue to fraud and injustice. It there-

fore appears reasonably certain that the legislature intended the subject statute to have a mandatory effect. We therefore are of the firm opinion that the provision of such statute which provides that the polls shall close at seven-thirty o'clock in the evening is mandatory and no one shall be permitted to vote after said prescribed hour. Any votes cast thereafter shall be illegal and void.

In view of our holding it is now necessary to consider the effect of the 50-75 votes that were cast in Precinct No. 38 after the hour of seven-thirty o'clock on the evening of the election. As reflected by the evidence these votes were commingled with all other votes cast in that precinct and it became impossible to distinguish them from the valid ballots. The question presented in this circumstance is whether the votes cast in Precinct No. 38 for this office can be counted or do the 50-75 illegal and void votes so contaminate the vote that the entire precinct must be thrown out.

While courts have expressed a reluctance to void an election or to reject the entire vote of a precinct, it is, in certain unfortunate circumstances, necessary to do so. The voice of the public demands and our statutes are designed to produce elections free from fraud and illegality. The true result of an election can be determined only by ballots cast and counted according to law. "When the poll can be purged of illegal votes, this should be done and only the illegal votes should be rejected and the legal votes counted. But, when this cannot be done, the entire poll must be thrown out, if it appears that enough illegal votes have been cast to affect the result of said poll, or to leave it in doubt." 6 M. J., Elections, Section 85.

Similar expressions are noted in 26 Am. Jur. 2d, Elections, Section 292, wherein the writer of that work comments as follows: "Extensive illegal voting, existing either alone or in combination with fraud and general disregard of statutory procedure designed to secure a fair expression of the popular will, is in most jurisdictions deemed suffi-

cient cause for voiding the election as a whole. * * * Frequently, where there has been an undeterminable but considerable number of illegal votes cast in a precinct, and particularly where there is accompanying fraud or disregard of election laws, the entire vote of the precinct has been rejected in determining the result of the election." See *Sailor* v. *Rankin*, 125 Ark. 557, 189 S. W. 357; *People ex rel. Hardacre* v. *Davidson*, 2 Cal. App. 100, 83 P. 161; *Hayes* v. *Abney*, 186 Miss. 208, 188 So. 533; *Bristow* v. *Sapulpa*, 33 Okla. 484, 126 P. 446; *Hughes* v. *Blackwell*, 161 S. C. 445, 159 S. E. 785; *Nelson* v. *Sneed*, 112 Tenn. 36, 83 S. W. 786; *Re Donahay's Election*, 21 N. J. Misc. 360, 34 A. 2d 299; Annotation, 155 A. L. R. 677 et seq.

In accordance with the principles herein stated and the authorities cited all of the votes cast in said Precinct No. 38 for the office of Judge of the 31st Judicial Circuit must be rejected and shall not be counted in determining the result of that election. In so holding we are not unmindful of the view that, in the absence of fraud, the votes of an entire precinct will not ordinarily be excluded for mere technical errors or irregularities. However, further reasons exist in the instant case. Here a substantial number of votes was cast in general disregard of the statutory mandate and such votes are therefore illegal and void. Such illegal votes were commingled with the valid votes. The number of illegal votes, admittedly 50-75, is sufficient to affect the result of the election, the contestant having received a majority of forty-two votes in that precinct. Since the void votes cannot be purged, thereby making impossible a count of the legal votes only, the entire precinct must be thrown out. Inasmuch as this is the only contest under consideration, our decision to reject the votes cast in Precinct No. 38 does not invalidate the votes cast in such precinct for other offices.

In view of our holding in relation to the votes cast in Precinct No. 38 and of the fact that the result of this election could not be changed by a consideration of the other assignments of error, we deem it unnecessary to discuss such other assignments.

For the reasons stated herein, the decision of the special court, whereby Mr. Sencindiver was certified as the winner of this election contest, is affirmed.

*Affirmed.*