IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0565

_____

IN RE: R.S.

FILED

**March 16, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 18-CJA-69

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: February 10, 2021
Filed: March 16, 2021

Carlie M. Fisher, Esq.
Schrader, Companion,
Duff & Law, PLLC
Wheeling, West Virginia
Counsel for Petitioners,
H.G. and B.G.

Mark D. Panepinto, Esq.
Panepinto Law Offices
Wheeling, West Virginia
Guardian ad Litem for the
child, R.S.

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent,
Department of Health and Human
Resources

JUSTICE ARMSTEAD delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 1, in part, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

2. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 3, in part, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001).

3. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

4. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

5. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

6. "The Legislature, when it enacts legislation, is presumed to know its prior enactments." Syl. Pt. 5, in part, *Pullano v. City of Bluefield*, 176 W. Va. 198, 342 S.E.2d 164 (1986).

7. "Where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958).

8. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W. Va. 645, 129 S.E.2d 921 (1963).

9. "In a contest over the custody of an infant, the welfare of the child is the polar star by which the discretion of the court is to be guided." Syl., *State ex rel. Palmer v. Postlethwaite*, 106 W. Va. 383, 145 S.E. 738 (1928).

10. "Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938).

11. W. Va. Code § 49-2-126(a)(6) (2020) requires a circuit court to conduct a best interest of the child analysis by considering a child's needs, and a family's ability to meet those needs. One factor that may be included in this analysis is a child's ability to remain with his or her siblings. A circuit court considering this factor should conduct its analysis in conformity with W. Va. Code § 49-4-111(e) (2015).

12. "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on

a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

13. "Matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

ARMSTEAD, Justice:

This appeal concerns two foster families seeking permanent placement of the child, R.S.[1] The circuit court ruled that new legislation, including W. Va. Code § 49-2-126(a)(6) (2020), mandated that R.S. be placed in the same home as his siblings. It determined that "there is nothing in this statute that directs that the Court do a balancing test or a best interest [of the child] analysis." The issue on appeal is whether the circuit court's interpretation of this new legislation was erroneous.

After review, we find that the circuit court's ruling is not supported by 1) the plain language of W. Va. Code § 49-2-126(a)(6), 2) pre-existing statutory law addressing the sibling preference, and 3) this Court's well-established caselaw that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). We reverse the circuit court's June 11, 2020, permanent placement order, and remand this matter to the circuit court for an evidentiary hearing, and further proceedings consistent with our ruling herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

R.S. was born in 2018. He is the youngest of five children born to C.S. and J.S. ("biological parents"). R.S. was removed from his biological parents' custody when

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials to identify the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

he was three months old due to allegations of abuse and neglect, and placed in the custody of the West Virginia Department of Health and Human Resources ("DHHR"). During the next year, R.S. spent time in two foster homes. Approximately one year after being removed from his biological parents' custody, R.S. and his four siblings were placed back with their biological parents. However, all five children were removed from the biological parents' home shortly thereafter. After this removal, R.S. was placed with another foster family—Petitioners, H.G. and B.G. ("Petitioners").[2] This placement was made in July of 2019.

The circuit court terminated the biological parents' parental rights in December of 2019. In February of 2020, Petitioners moved the circuit court to intervene, stating that they wanted to adopt R.S. Petitioners' motion provided that R.S. had formed a strong emotional bond with them and their two young children. The circuit court granted their motion to intervene.

At a review hearing in March of 2020, the DHHR informed the circuit court that it had located another foster family ("the K family") that would accept placement of all five siblings, including R.S. Counsel for Petitioners reiterated their desire to adopt R.S. at this hearing. The circuit court ordered the DHHR to complete a home study of the K

---

[2] One of R.S.'s siblings, A.S., was also placed in Petitioners' home at this time. However, shortly after this placement was made, A.S. was removed from Petitioners' home because of violent behavior by A.S.

family's residence. On March 23, 2020, the K family's home study was approved, and the four oldest siblings were placed with them.

Petitioners filed a motion with the circuit court raising concerns about removing R.S. from their care, and asserting that R.S. had developed a secure attachment and stability in their home. Petitioners also alleged that the K family did not have a relationship with R.S., and that R.S. did not have a significant relationship with his siblings. Based on these concerns, Petitioners requested that the circuit court order an expert assessment to examine the risks in moving R.S. to the K family's home.

The DHHR filed a response to this motion. It agreed that an expert bonding assessment should be conducted, and stated that a full evidentiary hearing was required to determine which placement would be in R.S.'s best interest. The Guardian ad Litem ("GAL"), who represented R.S. and his four siblings, objected to the request to conduct an expert bonding assessment. The GAL did not file a motion explaining his objection. Instead, the GAL orally told the circuit court that he believed R.S. should be placed with his other siblings in the K family home immediately.[3]

The circuit court entered an order on June 3, 2020, granting the motion for an expert bonding assessment, and ordered that it be filed with the court prior to June 30,

---

[3] The circuit court's order provides that "[t]he Court also heard from the GAL, who filed no formal pleading but objected to the evaluation. The GAL's position is that all of the [siblings] should be placed together immediately."

2020. Further, the circuit court ordered that a full evidentiary hearing on R.S.'s permanent placement would occur on July 30, 2020.

This evidentiary hearing did not occur. Instead, the circuit court issued an order on June 11, 2020, without conducting an evidentiary hearing and without having received the expert bonding assessment. The circuit court ordered that R.S. be permanently placed with his siblings in the K family's home based upon newly enacted legislation, W. Va. Code § 49-2-126, and W. Va. Code § 49-2-127 (2020),[4] which became effective on June 5, 2020. The circuit court concluded that under this new legislation, it had no authority to consider R.S.'s best interests over the child's right to be placed with his siblings. The order provides,

> [t]he Court must balance the rights of [Petitioners] to be "considered" as permanent placement for [R.S.] against [R.S.'s] statutory right under W. Va. Code § 49-2-126(a)(6) to be placed with a foster family, when possible, with his siblings. [R.S.] has clearly and definitively exercised this right, by and through his GAL, who is acting in [R.S.'s] best interests. Obviously, it is possible to place [R.S.] with his siblings given that the siblings are currently placed with a DHHR approved foster family that desires to have [R.S.] permanently placed with them. Further, [R.S.'s] siblings want him placed there.
>
> There is nothing in this statute that directs that the Court do a balancing test or a best interests analysis when [R.S.] has definitively exercised his statutory rights.

---

[4] The circuit court noted that W. Va. Code § 49-2-126 is referred to as "The Foster Child Bill of Rights," and W. Va. Code § 49-2-127 is referred to as "The Foster and Kinship Bill of Rights." The circuit court also noted that W. Va. Code § 49-1-206, providing definitions for "foster parent" and "foster family home," had been revised and amended.

The circuit court stayed the order for thirty days to permit Petitioners to appeal, and ruled that R.S. would not be removed from Petitioners' custody until the appeal was resolved. Petitioners filed a timely appeal of the circuit court's order in July of 2020, and retained custody of R.S. However, on December 5, 2020, the GAL filed an emergency motion with the circuit court to lift the stay of its prior order and to remove R.S. from Petitioners' custody and place him with the K family. The GAL's motion alleged that Petitioners were encouraging R.S. to make unfounded allegations of physical abuse against the K family. According to Petitioners' counsel, she received this motion on December 7, 2020, and requested the opportunity to file a response by the end of the day. However, before Petitioners had the opportunity to respond, the circuit court granted the motion on December 7, 2020, and R.S. was immediately removed and placed with the K family.[5]

During oral argument in this matter, counsel for Petitioners strongly contested the assertion that Petitioners encouraged R.S. to make unfounded allegations of physical abuse against the K family. Petitioners' counsel argued that the GAL's emergency motion had no basis in fact, and that the GAL offered no evidence to support this allegation.

---

[5] We find it troubling that R.S. was removed from the home where he had spent approximately half of his life without his foster parents (Petitioners) being provided with an opportunity to respond to the allegations in the GAL's December 5, 2020, motion.

The GAL's Rule 11(j)[6] update to this Court included a general statement on the emergency motion:

> The emergency motion was filed in light of what was perceived to be unfounded allegations of abuse and neglect alleged by the Appellants [Petitioners] and directed against the current foster to adopt family [the K family] alleging maltreatment of [the] minor child, R.S., during R.S.'s visits with his older sisters which occurred at the foster to adopt family's [the K family's] home. The allegations have been investigated and found to be without merit.

R.S. has resided with the K family since the circuit court granted the GAL's emergency motion in December of 2020.

## II. STANDARD OF REVIEW

Generally, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 1, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005) (internal citation omitted). This case requires us to examine W. Va. Code § 49-2-126. We have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 3, *Alden v.*

---

[6] Pursuant to Rule 11(j) of the West Virginia Rules of Appellate Procedure, "[t]he parties shall provide a written statement of any change in the circumstances that were set forth in the briefs within one week of any oral argument scheduled by the Court or within such other time as may be specified by order."

6

*Harpers Ferry Police Civil Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001) (internal citation omitted). With these standards in mind, we consider the parties' arguments.

### III. ANALYSIS

This appeal mainly concerns whether the circuit court erred in its interpretation of W. Va. Code § 49-2-126. We will also address whether, under the unique circumstances of this case, appointment of a new GAL to represent R.S. is appropriate.

We begin by examining whether the circuit court's interpretation of new legislation regarding foster children and foster parents, including W. Va. Code § 49-2-126, was erroneous. The circuit court determined that this new legislation mandated that R.S. be placed in the same home as his siblings, and found that "there is nothing in this statute that directs that the Court do a balancing test or a best interest [of the child] analysis."

Petitioners and the DHHR argue that the circuit court's interpretation of W. Va. Code § 49-2-126 was erroneous. The DHHR asserts that "the new statute codifying the rights of foster children must be considered in conjunction with the pre-existing sibling preference, and this Court's precedent that the best interests of the children are paramount when making decisions regarding the placement and permanency of children." Similarly, Petitioners contend that the circuit court erred by ruling that the best interest of the child standard is not necessary in permanency cases in which a child may be placed in a home with his or her siblings. Petitioners state that the new statute does not contain any language that would "nullify application of the best interest standard in child welfare and custody determinations." By contrast, the GAL argues in favor of the circuit court's interpretation

7

of W. Va. Code § 49-2-126, and urges this Court to affirm the circuit court's order. Further, the GAL states that "[t]hroughout this case, it has been the goal of this Guardian Ad Litem to ensure that all five (5) children were and are placed together in one foster/adoptive home[.]"

Our review of the circuit court's order requires us to examine W. Va. Code § 49-2-126.[7] This Court has held that in deciding the meaning of a statutory provision,

_____

[7] W. Va. Code § 49-2-126, in full, is as follows:

(a) Foster children and children in a kinship placement are active and participating members of the child welfare system and have the following rights: (1) The right to live in a safe and healthy environment, and the least restrictive environment possible; (2) The right to be free from physical, sexual, or psychological abuse or exploitation including being free from unwarranted physical restraint and isolation[;] (3) The right to receive adequate and healthy food, appropriate and seasonally necessary clothing, and an appropriate travel bag; (4) The right to receive medical, dental, and vision care, mental health services, and substance use treatment services, as needed; (5) The right to be placed in a kinship placement, when such placement meets the objectives set forth in this article; (6) The right, when placed with a foster of [sic] kinship family, to be matched as closely as possible with a family meeting the child's needs, including, when possible, the ability to remain with siblings; (7) The right, as appropriate to the child's age and development, to be informed on any medication or chemical substance to be administered to the child; (8) The right to communicate privately, with caseworkers, guardians ad litem, attorneys, Court Appointed Special Advocates (CASA), the prosecuting attorney, and probation officers; (9) The right to have and maintain contact with siblings as may be reasonably accommodated, unless prohibited by court order, the case plan, or other extenuating circumstances; (10) The right to contact the department or the foster care ombudsman, regarding violations of rights, to speak to representatives of these offices confidentially, and to be free from threats, retaliation, or punishment for making complaints; (11) The right to maintain contact with all previous caregivers and other important adults in his or her life, if desired, unless prohibited by court order or determined by the parent, according to the reasonable and prudent parent standard, not to be in the best interests of the child; (12) The right to participate in religious services and religious activities of his or her choice to the extent

(continued . . .)

8

"[w]e look first to the statute's language.  If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and

---

possible; (13) The right to attend school, and, consistent with the finances and schedule of the foster or kinship family, to participate in extracurricular, cultural, and personal enrichment activities, as appropriate to the child's age and developmental level; (14) The right to work and develop job skills in a way that is consistent with the child's age and developmental level; (15) The right to attend Independent Living Program classes and activities if the child meets the age requirements; (16) The right to attend court hearings and speak directly to the judge, in the court's discretion; (17) The right not to be subjected to discrimination or harassment; (18) The right to have access to information regarding available educational options; (19) The right to receive a copy of, and receive an explanation of, the rights set forth in this section from the child's guardian ad litem, caseworker, and attorney; (20) The right to receive care consistent with the reasonable and prudent foster parent standard; and (21) The right to meet with the child's department case worker no less frequently than every 30 days.

(b) The rights provided in this section do not create an independent cause of action. Violations of these rights may be reported to and investigated by the foster care ombudsman. On or before December 15, 2021 and on or before December 15 of every year thereafter, the foster care ombudsman shall submit a written summary of the number and nature of reports received, and investigations conducted in response to said reports, to the Joint Standing Committee on Government and Finance, the West Virginia Supreme Court of Appeals, and the Governor: Provided, That the summary required by this section may not include any personally identifying information of a person named in a report, or a person submitting a report to, the ombudsman.

unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

Our specific focus is on W. Va. Code § 49-2-126(a)(6). It provides:

> (a) Foster children and children in a kinship placement are active and participating members of the child welfare system and have the following rights: . . . (6) The right, when placed with a foster of [sic] kinship family, to be matched as closely as possible with a family meeting the child's needs, including, when possible, the ability to remain with siblings[.][8]

(Footnote added).

We find that W. Va. Code § 49-2-126(a)(6) is not ambiguous and that its plain meaning is clear. For the reasons explained below, we agree with Petitioners and the DHHR that the circuit court erred by concluding that this statute mandated that R.S. be

---

[8] We assume that the Legislature intended the word "or" instead of the word "of" in the following portion of W. Va. Code § 49-2-126(a)(6): "The right, when placed with a foster *of* kinship family[.]" (Emphasis added).

10

placed in the same home as his siblings, and removed the need for it to conduct a best interest of the child analysis.

First, W. Va. Code § 49-2-126(a)(6) does not include any mandatory language, such as the word "shall" or "must." In determining the meaning of statutory language, we look to the specific words employed by the Legislature to ascertain the legislative intent and meaning of the provision at issue. "It is not the prerogative of this Court to arbitrarily disregard the plain meaning of clearly written statutes." *McVey v. Pritt*, 218 W. Va. 537, 540, 625 S.E.2d 299, 302 (2005). This Court has noted that the Legislature routinely uses terms like "shall" when it intends to give a mandatory direction.[9]

Instead of using mandatory terms like "shall" or "must," W. Va. Code § 49-2-126(a)(6) directs that a child's ability to remain with siblings is to be *included* as a factor when making a permanent placement ruling. The statute does not restrict or limit a court to *only* consider whether a child has the ability to remain with siblings. We arrive at this conclusion by focusing on the following language in the statute: "[a foster child has] . . . [t]he right, when placed with a foster [or] kinship family, to be matched as closely as

---

[9] *See* Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."); Syl. Pt. 2, *Terry v. Sencindiver*, 153 W. Va. 651, 171 S.E.2d 480 (1969) ("The word 'shall' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.").

11

possible *with a family meeting the child's needs*, *including*, *when possible*, the ability to *remain* with siblings[.]" *Id.* (Emphasis added).

The language "to be matched as closely as possible *with a family meeting the child's needs*," requires a circuit court to conduct an analysis of 1) the child's needs, and 2) the family's ability to meet those needs. This language is direct, plain, and should be applied as written. By matching a child as closely as possible with a family that can meet the child's needs, the circuit court's task is clear—it must consider whether placement with a particular family meets the child's needs, an analysis that is generally synonymous with consideration of what is in the child's best interest.

Next, we find that the meaning of the phrase "including, when possible," preceding "the ability to remain with siblings," is also clear. The word "including" is a transitive verb meaning "to take in or *comprise as a part* of a whole or group."[10] (Emphasis added). We find that the use of the word "including" connotes that the ability to remain with siblings is one factor a court should consider, not the only factor. The phrase "when possible" is a recognition that there will be instances in which "the ability to remain with siblings" will not apply. "[T]he ability to remain with siblings" would not apply to a permanency hearing concerning an only child. Further, a family with custody of one or more siblings may not wish to adopt another sibling. Thus, we find the phrase "when

---

[10] *See Merriam-Webster Dictionary*, "Include," available at https://www.merriam-webster.com/dictionary/include.

12

possible" is plain, as one factor, and clear—if placement with siblings is possible, it should be included in the court's analysis.

Finally, we focus on the word "remain" in the last portion of W. Va. Code § 49-2-126(a)(6)—"the ability to *remain* with siblings." The word "remain" means "to stay in the same place or with the same person or group."[11] In the present case, at the time the circuit court entered its order, R.S. did not live with his siblings in the K family home. He had been in Petitioners' care for approximately one year. Thus, the result of the circuit court's order was not that R.S. would *remain* with his siblings. Rather, the circuit court ordered R.S. to be removed from his home, and placed in a new home. To be clear, we do not find that consideration of the ability to be placed with siblings under W. Va. Code § 49-2-126(a)(6) should only occur where the siblings are in the same home at the time the permanency decision is being made. Rather, we focus on the word remain here to demonstrate that the circuit court's conclusion that the statute imposed a mandatory duty on it to remove R.S. from Petitioners' home, and place him in a new home, is not supported by the plain language of the statute.

In sum, we conclude that W. Va. Code § 49-2-126(a)(6) does not mandate that a child be placed in the same home with his or her siblings. Rather, the statute requires consideration of the child's "needs" or best interest, which may include whether the child

---

[11] *See Merriam-Webster Dictionary*, "Remain," available at https://www.merriam-webster.com/dictionary/remain.

13

can be placed with his or her siblings. Our conclusion is consistent with pre-existing statutory law addressing the sibling preference, and a significant body of caselaw from this Court.

The newly enacted legislation, including W. Va. Code § 49-2-126(a)(6), must be considered in conjunction with our state's pre-existing sibling preference legislation. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

The Legislature has previously enacted a statute addressing the sibling preference. This statute, W. Va. Code § 49-4-111(e) (2015), provides that the best interest of the child must be considered in conjunction with the preference. It provides, in relevant part:

> (1) When a child is in a foster care arrangement and is residing separately from a sibling or siblings who are in another foster home or who have been adopted by another family and the parents with whom the placed or adopted sibling or siblings reside have made application to the department to establish an intent to adopt or to enter into a foster care arrangement regarding a child so that the child may be united or reunited with a sibling or siblings, the department shall, upon a determination of the fitness of the persons and household seeking to enter into a foster care arrangement or seek an adoption which would unite or reunite siblings, *and if termination and new placement are in the best interests of the children,* terminate the foster care arrangement and place the child in the household with the sibling or siblings.

14

(2) If the department is of the opinion based upon available evidence that residing in the same home would have a harmful physical, mental or psychological effect on one or more of the sibling children or if the child has a physical or mental disability which the existing foster home can better accommodate, *or if the department can document that the reunification of the siblings would not be in the best interest of one or all of the children,* the department may petition the circuit court for an order allowing the separation of the siblings to continue.

(3) If the child is twelve years of age or older, the department shall provide the child the option of remaining in the existing foster care arrangement *if remaining is in the best interests of the child*. In any proceeding brought by the department to maintain separation of siblings, the separation may be ordered only if the court determines that clear and convincing evidence supports the department's determination.

*Id.* (Emphasis added).[12]

---

[12] We discussed the application of the sibling preference in syllabus point four of *In re Carol B.*, 209 W. Va. 658, 550 S.E.2d 636 (2001), holding:

W. Va. Code § [49-4-111(e) (2015)] provides for a "sibling preference" wherein the West Virginia Department of Health and Human Resources is to place a child who is in the department's custody with the foster or adoptive parent(s) of the child's sibling or siblings, where the foster or adoptive parents seek the care and custody of the child, and the department determines (1) the fitness of the persons seeking to enter into a foster care or adoption arrangement which would unite or reunite the siblings, and (2) placement of the child with his or her siblings is in the best interests of the children. In any proceeding brought by the department to maintain separation of siblings, such separation may be ordered only if the circuit court determines that clear and convincing evidence supports the department's determination. Upon review by the circuit

(continued . . .)

15

The foregoing statute was neither modified nor repealed by the Legislature when it enacted W. Va. Code § 49-2-126(a)(6). "The Legislature, when it enacts legislation, is presumed to know its prior enactments." Syl. Pt. 5, *Pullano v. City of Bluefield*, 176 W. Va. 198, 342 S.E.2d 164 (1986) (Internal citation omitted). Even "where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958).

Our conclusion that W. Va. Code § 49-2-126(a)(6) requires a court to conduct a best interest of the child analysis does not conflict with W. Va. Code § 49-4-111(e). However, the circuit court's conclusion that W. Va. Code § 49-2-126(a)(6) mandated that R.S. be placed with his siblings, and did not require a best interest of the child analysis, would render W. Va. Code § 49-4-111(e) meaningless. Our rules of statutory construction do not permit us to disregard a statute without legislative direction to do so. Instead, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W. Va. 645, 129 S.E.2d 921 (1963). Because we presume the Legislature was aware of W. Va. Code § 49-

court of the department's determination to unite a child with his or her siblings, such determination shall be disregarded only where the circuit court finds, by clear and convincing evidence, that the persons with whom the department seeks to place the child are unfit or that placement of the child with his or her siblings is not in the best interests of one or all of the children.

16

4-111(e) when it enacted W. Va. Code § 49-2-126(a)(6), we find the circuit court's interpretation of the new statute is not permissible under our rules of statutory construction.

Next, we find that the circuit court's ruling is in direct opposition to well-established caselaw from this Court in which we have held that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T.*, 182 W. Va. at 405, 387 S.E.2d at 872 (citation omitted). For almost one hundred years, this Court has held that "[i]n a contest over the custody of an infant, the welfare of the child is the polar star by which the discretion of the court is to be guided." Syl., *State ex rel. Palmer v. Postlethwaite*, 106 W. Va. 383, 145 S.E. 738 (1928).

> As the Court made clear in a recent case,
>
> *regardless of whether there exists a placement preference that applies to the facts of this case, any preference always is tempered by a consideration of the children's best interests. See* Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."). *See also* Syl. pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In . . . custody matters, we have traditionally held paramount the best interests of the child."). *In other words, if allegiance to a preferential placement does not promote the children's best interests, such preference must yield to the placement that is most beneficial to the children. See In re Elizabeth F.*, 225 W. Va. 780, 787, 696 S.E.2d 296, 303 (2010) (per curiam) ("[A]doption by a child's grandparents is permitted only if such adoptive placement serves the child's best interests. If, upon a thorough review of the entire record, the circuit court believes that a grandparental adoption is not in the subject child's best interests, it is not obligated to prefer the grandparents over another, alternative placement that does . . . serve the child's best interests." (citations omitted)).

17

*In re K.L.*, 241 W. Va. 546, 557, 826 S.E.2d 671, 682 (2019) (Emphasis added).

The circuit court's ruling in the instant matter is in direct opposition to this long-standing jurisprudence and would obliterate our settled law that the child's best interest is the main concern in cases involving custody decisions. Such a ruling would arguably lead to an absurd result—ignoring the best interests of a particular child and elevating the sibling preference above all else in a permanency hearing. We have held that "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938).

Based on all of the foregoing, we hold that W. Va. Code § 49-2-126(a)(6) requires a circuit court to conduct a best interest of the child analysis by considering a child's needs, and a family's ability to meet those needs. One factor that may be included in this analysis is a child's ability to remain with his or her siblings. A circuit court considering this factor should conduct its analysis in conformity with W. Va. Code § 49-4-111(e).

Applying this holding to the instant matter, we find that the circuit court erred by failing to conduct a best interest of the child analysis, and ordering that R.S. be placed with the K family based solely on its conclusion that this placement was mandatory under W. Va. Code § 49-2-126(a)(6). We further find the circuit court erred by removing R.S. from Petitioners' custody on December 7, 2020, and placing him with the K family without

18

holding a hearing and giving Petitioners the opportunity to respond to the GAL's motion.[13]

On remand, the circuit court must hold an evidentiary hearing, and consider the statutory requirements including which placement is in R.S.'s best interest.

Additionally, on remand, we find that the circuit court should consider appointing a new GAL to represent R.S. Petitioners assert, and we agree, that R.S.'s best interests may be different than the best interests of his four siblings. R.S. was placed with Petitioners after being removed from his biological parents' custody in July of 2019. At the time R.S. was removed from Petitioners' custody, he had spent approximately half of his life living with them and their two children.

During oral argument in this matter, the GAL stated that he has had one goal throughout these proceedings—reuniting all five siblings in one home. The circuit court's June 3, 2020, order provides that the GAL objected to the expert bonding evaluation

---

[13] We are seeing an increasing number of cases where children are being removed and placed in a different home while the issue of where they should permanently reside is pending before this Court. We recognize that there are emergency situations that necessitate such action, but there can be dire ramifications. This Court has long recognized that children under the age of three are likely to have their emotional and physical development adversely affected by numerous placements. Syl. Pt, 1, in part, *In re R.J.M.,* 164 W. Va. 496, 266 S.E.2d 114 (1980). In this case, R.S. has resided with four different foster families since he was removed from his biological parents' custody at the age of three months old. Given the probable negative impact multiple placements have on a child's development and given that yet another placement may occur upon remand, circuit courts must be certain that an emergency removal under circumstances such as those present here is in the child's best interest. The determination can only be made if all parties appropriately entitled to input into the decision are given the opportunity to respond to the allegations that prompt the removal request.

19

requested by Petitioners and the DHHR: "[t]he GAL's position is that all of the [siblings] should be placed together immediately." Because the GAL is tasked with protecting the best interests of R.S., we cannot discern why he objected to an expert bonding evaluation that would have included important, relevant information concerning R.S.'s relationship with Petitioners. Similarly, we do not understand why the GAL wanted R.S. to be removed from Petitioners' custody "immediately" in June of 2020 before the bonding evaluation and the evidentiary hearing that would have adduced evidence from Petitioners, the DHHR, and the K family concerning R.S.'s best interests had occurred. Further, we question whether "immediate" removal from the home where R.S. had seemingly found stability would have been in his best interest in June of 2020. Even if placement of R.S. with the K family would have been supported by the evidence, in *Kristopher O. v. Mazzone*, 227 W. Va. 184, 194, 706 S.E.2d 381, 391 (2011), this Court stated that "it has been long understood that the law governing child custody directs that a child's best interests are best served by a gradual transition to a new home."

During oral argument, the GAL described the bond that R.S. has formed with the K family and with his four biological siblings. We have no reason to doubt that such bonds have formed. However, the GAL has not described the bond R.S. has formed with Petitioners or with their two children. We again note that Petitioners had custody of R.S. for approximately half of the child's life.

It appears that because the GAL has only focused on keeping the five biological siblings together, he has not adequately considered whether R.S.'s best interests

may not align with that of his four siblings. Therefore, we find that on remand, the circuit court should consider appointing a new GAL to solely represent R.S., and consider his best interests including but not limited to the bond R.S. has formed with the K family and his biological siblings, as well as the bond R.S. has formed with Petitioners and their two children. This consideration should also include an assessment of R.S.'s individual needs, the K family's ability to meet those needs, and Petitioners' ability to meet those needs.

Finally, counsel for Petitioners has stated that Petitioners have sought visitation with R.S. On remand, the circuit court should address this request. We note that W. Va. Code § 49-2-126(a) (11) provides:

> Foster children and children in a kinship placement are active and participating members of the child welfare system and have the following rights: . . . (11) The right to maintain contact with all previous caregivers and other important adults in his or her life, if desired, unless prohibited by court order or determined by the parent, according to the reasonable and prudent parent standard, not to be in the best interests of the child[.]

We urge the circuit court, and all of the parties herein, to hold the evidentiary hearing, and determine R.S.'s ultimate placement as quickly as possible. We have held that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). We have also recognized "matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a

21

court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *Carlita B.*

To facilitate the commencement and conclusion of the remand proceedings, we issue the mandate of the Court contemporaneously with the issuance of this opinion.

## IV. CONCLUSION

We reverse the circuit court's June 11, 2020, order. This case is remanded for further proceedings on an expedited basis consistent with this opinion. The mandate of the Court shall issue forthwith.

Reversed and Remanded With Directions.